## No. 26198

### The People of the State of Colorado v. William Henry Thomas

(542 P.2d 387)

Decided November 17, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, Gregory L. Williams, Assistant, for plaintiff-appellee.

Daniel B. Mohler, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant Thomas was convicted of first-degree burglary under 1971 Perm. Supp., C.R.S. 1963, 40-4-202[1] and as a habitual criminal. He was sentenced according to the Habitual Criminal Statute, Colo. Sess. Laws 1972, ch. 44, 39-13-101 at 253.[2] The trial court denied his motion to suppress evidence found during an inventory search of his car. The trial court also denied his post-conviction motion to quash the habitual criminal charge, which motion alleged, that the habitual criminal statute is unconstitutional. On this appeal, the defendant asserts that these rulings are erroneous and therefore the judgment of conviction should be reversed. We find no merit to the defendant's contentions and therefore affirm the judgment.

## I.

Jewelry, watches and other items were taken during the night from a store in Cripple Creek, Colorado. During the early morning hours of the following day, police officers in nearby Woodland Park, Colorado, responded to a silent burglary alarm at the Woodland Park Pharmacy. Upon their arrival, they observed a car parked near a side door of the store and noted two sets of footprints in the snow leading to the front door. One officer went to a side door of the pharmacy where he heard a male voice inside saying that "they" had to hurry up and get out in case there was an alarm. Meanwhile, another officer observed that the glass in the front door had been smashed and from that location, he saw the defendant and a female companion removing drugs from the shelves in the back of the pharmacy. He ordered them to raise their hands and to walk to the front of the store. After hurriedly consuming some of the drugs, they complied and were immediately placed under arrest.

A search of the defendant revealed that he was armed with two guns and his companion was also in possession of a gun. At this time, the defendant volunteered that he broke into the store because he needed the drugs. The officers testified that defendant appeared to be behaving normally at this time, but that he later became very ill and was taken to the hospital.

A pry bar and several suitcases, containing only drugs taken from the shelves, were found inside the pharmacy.

---

[1]Now section 18-4-202, C.R.S. 1973.
[2]Now section 16-13-101(1), C.R.S. 1973.

After the defendant and his companion were jailed, his car was impounded and taken to the police station. Later that morning, an inventory search was conducted pursuant to established police department procedures. This search produced several items of jewelry which were linked to the burglary at the Cripple Creek store, a pair of plastic gloves, a flashlight, six boxes of ammunition, pliers, wirecutters, clothing, and other miscellaneous articles.

The defendant was charged in several counts with burglary of the Woodland Park Pharmacy, burglary and felony theft stemming from the Cripple Creek break-in, and being a habitual criminal. It was alleged that he had previously been convicted of burglary and aggravated robbery.

At trial, the defendant testified that he was a heroin addict and that he broke the front glass door and entered the Woodland Park Pharmacy to "get drugs," because he and his companion were suffering from withdrawal. He denied any participation in the burglary of the store in Cripple Creek.

With reference to the jewelry items which were taken in the Cripple Creek burglary and found in his car, the defendant testified that a friend had given these items to him to exchange for drugs.

The jury found the defendant guilty of the Woodland Park Pharmacy burglary and acquitted him of the two counts relating to the Cripple Creek burglary. The jury also found that he had two prior felony convictions, whereupon, the court imposed an enhanced sentence under the Habitual Criminal Statute.

## II.

Defendant Thomas challenges the constitutionality of the search of his car and the use of evidence obtained as a result of the search at his trial. However, we hold that the issue of constitutionality of the search is now moot because the fruits of the search were used primarily to prove that the defendant was guilty of the burglary and theft at the Cripple Creek store, on which charges he was acquitted.

The defendant argues further, however, that the evidence in the car prejudiced his case in regard to the question of his ability to form the specific intent necessary to commit the burglary at the Woodland Park Pharmacy. However, in reply to this argument, we note that he was caught by the police inside the pharmacy while armed and while taking drugs off the shelves. A crowbar and suitcases were found inside the pharmacy. During his arrest, he told the police that "he did it for the drugs." He even admitted during cross-examination that he "broke into the pharmacy" to get drugs. These facts and this evidence amply support a jury finding that Thomas had the requisite specific intent to commit first-degree burglary.

Therefore, even assuming that the trial court committed error by not suppressing the inventoried items, we hold that this could not have materially and substantially prejudiced him since there was an overwhelming amount of competent evidence apart from this disputed evidence to

support his conviction. Thomas did not meet his burden of disclosing and establishing prejudicial error; the mere possibility of prejudice is insufficient to warrant reaching the merits of the constitutionality of the inventory search. *See e.g., People v. Jones,* 184 Colo. 96, 518 P.2d 819 (1974); *Gould v. People,* 167 Colo. 113, 445 P.2d 580 (1968); *Segura v. People,* 159 Colo. 371, 412 P.2d 227 (1966). To constitute reversible error, the questionable evidence must have had a substantial influence on the verdict. *People v. Hanson,* 189 Colo. 101, 537 P.2d 739 (1975).

III.

The defendant also argues that the Habitual Criminal statute is unconstitutional in its application because its rare use and severity of punishment renders it a denial of equal protection of the laws, due process of law, and freedom from cruel and unusual punishment. To support his contention, he appends to his brief, a statistical study[3] prepared at the Colorado State Penitentiary which shows that only thirty persons were actually sentenced under the Habitual Criminal statute in the last twenty years out of a potential group of 3,220 inmates sentenced to the penitentiary with three or more prior felony convictions. We find this argument without merit.

Both the United States Supreme Court and the Colorado Supreme Court have ruled unequivocally that habitual criminal statutes are constitutional despite contentions that they violate constitutional strictures dealing with double jeopardy, *ex post facto* laws, cruel and unusual punishments, due process, equal protection, and privileges and immunities. *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1964); *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Bernard v. Tinsley,* 144 Colo. 244, 355 P.2d 1098 (1960); *Vigil v. People,* 137 Colo. 161, 322 P.2d 320 (1958).

In *Oyler,* the court was faced with the identical equal protection issue raised here by the defendant. The petitioner there also appended statistical data based on prison records to support his allegation that he was denied his constitutional rights since the Habitual Criminal statute was imposed so rarely. The court first questioned in the following statement the probative value of such data to prove arbitrary enforcement:

"We note that it is not stated whether the failure to proceed against other three-time offenders was due to lack of knowledge of the prior offenses on the part of the prosecutors or was the result of a deliberate policy of proceeding only in a certain class of cases or against specific persons. The statistics merely show that according to penitentiary records a high percentage of those subject to the law have not been proceeded against. There is no indication that these records of previous convictions, which may not have been compiled until after the three-time offenders had reached the penitentiary, were available to the prosecutors. . . ."

---

[3]The People in their brief deny that this statistical report was ever formally admitted into evidence. Because of the disposition we make of this case, we do not have to reach the issue whether the report was properly before the court.

The court in *Oyler* then held that:

"[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged."

■ As in *Oyler*, this defendant fails to prove that statistical selectivity in enforcement violates his constitutional rights. As he admits, and as the statistician expressly states in his study, the proffered statistics do not show how many of the men had been originally charged with a habitual count but had not been sentenced through plea negotiation or failure of proof. Furthermore, the study fails to indicate why a prosecutor might have decided not to bring habitual charges against those persons who had been convicted of prior felonies. Ignorance of the prior felonies, difficulties of proof, and considerations of whether the prior convictions could be collaterally attacked are all legitimate factors that could have influenced a prosecutor's decision. In conclusion, the data does not substantiate completely arbitrary or discriminatory enforcement based on invidious classifications. Based on the *Oyler* rationale, the defendant's constitutional challenge to the recidivist charge on grounds of equal protection cannot therefore be upheld.

Nevertheless, defendant argues that *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which voided the death penalty in certain cases, supersedes *Oyler*. He contends that the result in *Furman* requires that the enhanced penalties of the recidivist statute be mandatorily enforced or not used at all. Otherwise, its allegedly infrequent application constitutes a cruel and unusual punishment.

Even assuming that his suspect data could demonstrate infrequency of use, we cannot conclude that *Furman* stands for the proposition advanced by the defendant. The court in *Furman* failed to reach a consensus as to why the death penalty was unconstitutional as applied in the cases before it. The opinions of the five concurring justices are impossible to reconcile and certainly do not provide the principle of law which the defendant argues should be applied to a penalty less severe than death. *See People v. Lichtenwalter*, 184 Colo. 340, 520 P.2d 583 (1974); *People ex rel. Dunbar v. District Court*, 179 Colo. 304, 500 P.2d 358 (1972). Furthermore, Justice Douglas in his concurring opinion premises his analysis in part upon the possibility of racial discrimination, also not a factor in the instant case. Consequently, *Furman* does not discount the court's well reasoned analysis in *Oyler*.

■ Absent invidious discrimination based upon factors such as race, religion, or other arbitrary classification, the alleged infrequent or selective use of the recidivist statute cannot be reasonably challenged by a proven habitual offender who was on notice of its possible use. The increased punishment under the statute is not arbitrary because it can only

be imposed after the proof of the additional facts of prior convictions.

■ Also, the defendant's sentence is not disproportionate to his conduct or grossly excessive as he contends. He had been convicted of burglary and aggravated robbery before his present conviction for first-degree burglary. "It is well settled that if a sentence is imposed within the statutory limits and if it does not shock the conscience of the court, it will not be disturbed by a reviewing court on the grounds that it constitutes cruel and unusual punishment. . . ." *People v. Fulmer*, 185 Colo. 366, 524 P.2d 606, 607 (1974).

## IV.

The defendant also cites error in the trial court's computation of the time of his sentence under the Habitual Criminal statute. The statute provides that a habitual criminal

". . . shall be punished by confinement in the state penitentiary for a term of not less than the longest term, nor more than three times the longest term prescribed upon a first conviction."

The defendant therefore argues that a strict construction of the terms "first conviction" would mandate that the trial court compute the sentence under the statute based upon either the sentence imposed for his first prior felony conviction or the sentence that would have actually been imposed for his present conviction for first-degree burglary as a first offender.

■ However, this argument overlooks the fact that the recidivist statute does not attempt to resentence a defendant for a prior felony. *Wright v. People*, 116 Colo. 306, 181 P.2d 447 (1947). Consistently, the sentence to be imposed relates only to the enhancement of punishment of the felony for which he is currently charged and convicted. *Maestas v. District Court,* 189 Colo. 443, 541 P.2d 889. Here, the defendant was convicted of a class three felony, carrying a minimum of five and a maximum of forty years. Defendant was ultimately sentenced on the basis of this conviction to a term of from forty to fifty years. The sentence was properly computed on the basis of the maximum possible sentence for first-degree burglary for which the defendant had just been convicted.

We find the other arguments advanced by the defendant to be without merit and to require no further discussion.

Judgment affirmed.

MR. JUSTICE ERICKSON concurs in result only.

MR. CHIEF JUSTICE PRINGLE does not participate.