The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Richard VELASQUEZ,
Defendant-Appellee.

No. 82SA352.

Supreme Court of Colorado,
En Banc.

July 18, 1983.

John A.F. Wendt, Jr., Dist. Atty., Michael H. Argall, Asst. Dist. Atty., Montrose, for plaintiff-appellant.

Richard Velasquez, pro se.

QUINN, Justice.

The People appeal[1] from a judgment of dismissal entered at the conclusion of the trial evidence. The trial court granted the motion of the defendant, Richard Velasquez, to dismiss the charge of possession of a marihuana concentrate, namely hashish, section 18–18–106(4)(b)(I), C.R.S.1973 (1982 Supp.), on the ground that the conduct proscribed by this class 5 felony offense is

1. The People's appeal is pursuant to the legislative authorization found in section 16–12–102, C.R.S.1973 (1978 Repl.Vol. 8). Because the judgment of dismissal was entered after jeopardy had attached, double jeopardy principles, *U.S. Const.*Amends. V and XIV; *Colo. Const.* Art. II, Sec. 18, preclude the reinstatement of the charges against the defendant. *E.g., People v. Quintana,* 634 P.2d 413 (Colo.1981); *People v. Paulsen,* 198 Colo. 458, 601 P.2d 634 (1979). We, therefore, can only approve or disapprove the trial court's judgment and cannot order a new trial when the judgment is disapproved.

indistinguishable from the conduct proscribed by the class 2 petty offense of possession of "not more than one ounce of marihuana," section 18–18–106(1), C.R.S. 1973 (1982 Supp.), and that, therefore, the application of the felony statute to the defendant violated equal protection of the laws. *U.S. Const.*Amend. XIV; *Colo. Const.* Art. II, Sec. 25.[2] We disapprove the judgment of dismissal.

## I.

The facts are not in dispute. The defendant was arrested on December 1, 1981 for driving under the influence of intoxicating liquor. In the course of a custodial search of the defendant, the arresting officer uncovered several small tinfoil packets of a brown resinous substance which he suspected to be hashish. Laboratory analysis performed by the Colorado Bureau of Investigation confirmed the officer's suspicion. The defendant was accordingly charged with the class 5 felony of possession of a marihuana concentrate, namely hashish, and trial to a jury commenced on May 24, 1982.

Both the prosecution and the defense presented expert testimony identifying the material in question as hashish and describing the manner in which hashish is made. Ordinarily, marihuana is made by grinding up the leaves and other parts of the marihuana plant. The expert testimony was that the leaves of the plant exude a resin, possibly as a means to avoid dehydration. This resin can be clearly identified under microscopic examination and contains the

pharmacologically active agent Delta 9 Tetrahydrocannabinol (THC), which produces a state of intoxication in the user. The amount of THC in ordinary marihuana is only .05 to 1 percent of the total quantity of material. Hashish, in contrast, is made by extracting the resin directly from the marihuana plant, permitting it to dry, and then compressing it. The THC concentrate in hashish is considerably greater than the THC concentrate in ordinary marihuana, as much as eight to twenty times according to the prosecution's expert witness.

At the conclusion of the evidence the trial court dismissed the charge of possession of a marihuana concentrate, reasoning as follows: marihuana, as defined in section 12–22–303(17), C.R.S.1973 (1982 Supp.), means "all parts of the plant cannabis sativa L.,"[3] including "the resin extracted from any part of the plant;" the term "marihuana concentrate," as defined in section 12–22–303(18), C.R.S.1973 (1982 Supp.), includes "hashish,"[4] which, according to the expert testimony at trial, is made from the resin extracted from the plant cannabis sativa L.; thus, "hashish" satisfies the definition of both "marihuana" and "marihuana concentrate," and the difference in penalty for possessing this substance violates equal protection of the laws. The People then pursued this appeal.

## II.

The People contend that the trial court erred in dismissing on equal protection grounds the felony charge of possession

**2.** The right to equal protection of the laws finds support in the Due Process Clause of the Colorado Constitution, Article II, Section 25. *E.g., Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980); *Vanderhoof v. People,* 152 Colo. 147, 380 P.2d 903 (1963).

**3.** Section 12–22–303(17), C.R.S.1973 (1982 Supp.), defines "marihuana" as follows:
"'Marihuana' or 'marijuana' means all parts of the plant cannabis sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of the plant, and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds, or its resin. It does not include the mature stalks of the plant, fiber produced

from the stalks, oil or cake made from the seeds of the plant, or any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, cake, or sterilized seed of the plant which is incapable of germination."

**4.** Section 12–22–303(18), C.R.S.1973 (1982 Supp.), defines "marihuana concentrate" as follows: "'Marihuana concentrate' means hashish, tetrahydrocannabinols, or any alkaloid, salt, derivative, preparation, compound, or mixture, whether natural or synthesized, of tetrahydrocannabinols."

of a marihuana concentrate. In the People's view, a marihuana concentrate such as hashish is readily distinguishable from and potentially more intoxicating than marihuana and, therefore, the legislative decision to classify and punish possession of hashish differently than the possession of marihuana is a reasonable exercise of its lawmaking function. We agree with the People's argument.

■ Basic and elementary principles of constitutional adjudication must guide our analysis. A statute in the first instance is presumed to be constitutional, and the burden falls upon the person attacking the statute to establish its unconstitutionality. *E.g., People v. Alexander,* 663 P.2d 1024 (Colo.1983); *Bollier v. People,* 635 P.2d 543 (Colo.1981); *People v. Summit,* 183 Colo. 421, 517 P.2d 850 (1974). Where, as here, a statute does not infringe upon a fundamental right or involve a suspect classification, a statutory classification, in order to withstand an equal protection challenge, need only rest upon some reasonable basis in fact and be reasonably related to a legitimate governmental interest. *E.g., Dawson v. Public Employees Association, et al.,* 664 P.2d 702 (Colo.1983); *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980); *People v. Summit, supra.* While equal protection of the laws prohibits the punishment of identical criminal conduct with disparate penalties, *e.g., People v. Marcy,* 628 P.2d 69 (Colo. 1981); *People v. Bramlett,* 194 Colo. 205, 573 P.2d 94 (1977), *cert. denied,* 435 U.S. 956, 98 S.Ct. 1590, 55 L.Ed.2d 808 (1978), criminal legislation is not constitutionally infirm simply because the offender's conduct may violate more than one statutory proscription. It is only when "the *same conduct* is proscribed in two statutes, and *different criminal sanctions* apply, that problems arise under equal protection ...." *People v. Taggart,* 621 P.2d 1375,

1382 (Colo.1981), quoting *People v. Czajkowski,* 193 Colo. 352, 356, 568 P.2d 23, 25 (1977). A review of the statutory scheme in question satisfies us that there is a sufficient difference between the possession of marihuana and the possession of a marihuana concentrate, such as hashish, to justify the resulting differential in classification and penalty adopted by the legislature.

The premise underlying the district court's ruling is that the statutory definition of marihuana is broad enough to include hashish and, therefore, there is no reasonable basis to support the felony classification and harsher penalty for possession of hashish as a marihuana concentrate. To be sure, hashish, which is made from the resin of the marihuana plant, satisfies both the statutory definition of marihuana in section 12–22–303(17), C.R.S.1973 (1982 Supp.) and the statutory definition of marihuana concentrate in section 12–22–303(18), C.R.S.1973 (1982 Supp.). Because hashish is marihuana, however, does not mean that all marihuana is hashish. On the contrary, as the expert witnesses testified in this case, crude or ordinary marihuana consists of ground-up leafy and bulky material from the marihuana plant. Because the leaves secrete the potent resin, crude marihuana undoubtedly will contain some of this resinous material. Hashish, on the other hand, is made directly from the resin secreted by the leaves.[5] This resin is clearly identifiable by microscopic examination and is readily distinguishable from the other parts of the plant.

Although both hashish and nonconcentrated marihuana contain THC, the pharmacological agent responsible for the intoxicating effect on the user, hashish is far richer in THC than the crude or ordinary type of marihuana. *See* E. Brecher, *Licit and Illicit Drugs* 400 (1972); L. Goodman and A. Gilman, *The Pharmacological Basis*

---

5. The expert testimony adduced at trial indicated that there are several methods of extracting the resin from cannabis plants. One method is to grind the plant and mix it in a solvent. The solvent will extract the resin from the other parts of the plant, which then can be discarded. The solvent is then boiled out of the resinous remainder, and the residue is compressed and dried. A more primitive method is to simply wear a burlap apron and walk through rows of marihuana plants. The resinous material will adhere to the apron, and can ultimately be scraped off. It also is then compressed.

*of Therapeutics* 298–300 (4th ed. 1970); *see also United States v. Cimoli,* 10 M.J. 516 (A.F.C.M.R.1980); *United States v. Lee,* 1 M.J. 15 (C.M.A.1975); *State v. Floyd,* 120 Ariz. 358, 586 P.2d 203 (1978), *appeal dismissed,* 440 U.S. 952, 99 S.Ct. 1487, 59 L.Ed.2d 765 (1979). The high concentration of THC in hashish will undoubtedly produce a greater alteration in the user's conscious state, with concomitant distortions of perception and loss of control. Hashish, therefore, poses a more serious danger to the user and to the public in general than a similar amount of marihuana in nonconcentrated form.[6]

We are satisfied that the greater concentration of THC in hashish provides a reasonable basis for the legislature's decision to classify hashish as a marihuana concentrate and to punish the crime of possession of a marihuana concentrate more severely than the crime of possession of not more than one ounce of crude or nonconcentrated marihuana. *See State v. Floyd, supra* (rejecting equal protection challenge to statutes penalizing possession of hashish more severely than possession of marihuana, the court noting that the greater concentration of THC in hashish "may render it more susceptible to serious and extensive abuse than bulkier marihuana, easier to conceal, hence more difficult to detect and seize"); *State v. Petrie,* 65 Hawaii 174, 649 P.2d 381 (1982) (state has a legitimate interest in punishing those charged with promotion of hashish more severely than those charged with the promotion of marihuana, the court noting a legislative report indicating that the concentration of THC in hashish results in more dangerous effects than marihuana and stressing that penalizing the former

more severely would help warn the public of the greater danger). This difference in treatment for the two offenses is reasonably related to the state's legitimate interest in prohibiting the possession and use of drugs and other intoxicants that pose a danger to the user and the general public. We therefore conclude that the statutory proscription for the crime of possession of a marihuana concentrate, namely hashish, does not violate equal protection of the laws.

The judgment of the district court is disapproved.

---

6. We recognize that because both hashish and ordinary marihuana originate from the same source, the plant cannabis sativa L., close questions may arise in some cases as to the appropriate categorization of the substance as one or the other. For example, the proportion of the bulky, nonresinous plant material admixed with the resin may be such that expert witnesses may be unable to state that the resulting substance satisfies the pharmacological criteria of hashish. We view this problem as a problem of proof and not as one of constitutional infirmity affecting the statutory classification.

The prosecution bears the burden of presenting evidence from which a reasonable person could conclude beyond a reasonable doubt that the character of the substance in question does satisfy the pharmacological criteria of hashish. If the evidence will not support this conclusion, then the prosecution will not have sustained its burden of proof on this element of the offense. In the present case, however, no such problem exists. All the expert witnesses who testified in this case were of the opinion that the substance in question was indeed hashish.