The **PEOPLE** of the State of Colorado,
Plaintiff-Appellee,

v.

Edward T. **HAYMAKER,**
Defendant-Appellant.

No. 84SA497.

Supreme Court of Colorado,
En Banc.

March 17, 1986.

As Modified on Denial of Rehearings
April 21, 1986.

---

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Public Defender, John P. Leopold, Special Deputy State Public Defender, Littleton, for defendant-appellant.

DUBOFSKY, Justice.

The defendant, Edward T. Haymaker, appeals his conviction and the sentence imposed by the District Court for Mesa County for first degree sexual assault, and a crime of violence. We determine that the district court did not abuse its discretion in denying a mistrial when a witness referred to certain evidence outside the scope of a stipulation or in admitting evidence of the victim's state of mind after the commission of the crime. We also determine that the defendant's sentence for sexual assault was proper because the provisions of sections 16–11–309(1) and 18–1–105(9)(a)(I), 8 C.R.S. (1985 Supp.), that mandate a sentence in the aggravated range may constitutionally be applied to a defendant convicted of first degree sexual assault committed with a deadly weapon.[1] Therefore, we affirm the judgment of the district court.

At trial the victim testified that she awoke about 2 a.m. on August 5, 1983, when she felt someone touch her in the pelvic area. Thinking that her two-year-old daughter was standing next to the bed, she stretched out her arm, and a man grabbed it. During the course of the next two and a half hours, the man sexually assaulted her several times at knifepoint and threatened to kill her and her daughter. After the assailant left the victim's apartment, she heard him walk along the balcony past her window and land with a thud on the other side of the divider which separated her balcony from that of the neighboring apartment. She then telephoned her parents, who came to her apartment, and her father immediately called the police. The victim also testified that when she was

---

**1.** Because the defendant challenges the constitutionality of a state sentencing statute, the case was transferred from the court of appeals to this court under sections 13–4–102(1)(b) and 13–4–110(1)(a), 6 C.R.S. (1973).

moving out of her apartment on August 7, she saw a man, standing on the balcony of the neighboring apartment, whom she identified as her assailant. She had met him the previous Tuesday evening in the apartment complex laundry room and knew that he lived next door. Police officers arrested the man she identified, the defendant, at work the next day.

The People presented testimony at trial that pubic hair discovered in the victim's bed matched the defendant's pubic hair, that a knife and watch taken from the defendant upon his arrest essentially matched the descriptions of the assailant's knife and watch given by the victim, and that entry to the victim's apartment was gained by loosening the screen in her daughter's bedroom. The victim's mother testified that after the assault the victim was afraid to be alone and for two months she slept with her mother, jumping and crying out if someone touched her while she was asleep. The defendant, testifying on his own behalf, claimed that he knocked on the door to the victim's apartment early in the morning on August 5, that she invited him in, and that after a period of time spent talking, they engaged in consensual sexual intercourse.

The jury found the defendant guilty of first degree sexual assault, first degree burglary, felony menacing, and crime of violence. The district court determined that the statutory scheme required it to impose a sentence for first degree sexual assault in the aggravated range for a class 2 felony of more than 12 but not more than 24 years. Accordingly, the court sentenced the defendant to fourteen years for first degree sexual assault, ten years for first degree burglary, and two years for felony menacing, the sentences to run concurrently. On appeal the defendant challenges two of the district court rulings as an abuse of discretion. He also challenges the constitutionality of the statutes under which the sentence for first degree sexual assault was imposed.

## I.

### A.

Prior to trial, the defense and the prosecution stipulated that an agent of the Colorado Bureau of Investigation analyzed certain fingerprints found at the crime scene and determined that the prints were not those of the defendant. The stipulation permitted this information to be introduced into evidence by a police officer who received it from the C.B.I. agent. During cross-examination, defense counsel asked the police officer whether the officer had obtained the fingerprints of the victim. When the officer responded that he had not, defense counsel inquired whether the stipulation precluded further fingerprint investigation. The police officer responded that it did not.

On redirect examination, the prosecutor asked the police officer if, to his knowledge, the People had offered to take other fingerprints at the request of the defense. An objection to the question was overruled, and the officer answered that the People had offered to do so. At this point, one of the two defense attorneys indicated a desire to testify concerning the stipulation, asked the court for leave to withdraw from representing the defendant, and moved for a mistrial. The court denied both motions, stating that co-counsel could question the defense attorney, as a witness, about the stipulation. The defendant here renews his argument that the district court erred in denying the motions for a mistrial and for leave to withdraw.

A mistrial is a drastic remedy for improper prejudicial conduct, and a trial court's ruling on a motion for a mistrial will not be disturbed on appeal unless the ruling amounted to a gross abuse of discretion. *People v. Hodges*, 624 P.2d 1308 (Colo. 1981); *People v. Sexton*, 192 Colo. 81, 555 P.2d 1151 (1976); *People v. Lowe*, 184 Colo. 182, 519 P.2d 344 (1974). There is insufficient evidence in this case of either improper conduct or prejudice to warrant reversal of the district court's ruling.

■ The district court observed that defense counsel had "opened the door" on cross-examination to further inquiry concerning the circumstances of the stipulation. We agree. There is nothing in the stipulation that should permit the defense to create the impression that the fingerprint investigation was less than thorough while denying the prosecution the opportunity to dispel that impression. *Cf. People v. Tenorio,* 197 Colo. 137, 590 P.2d 952 (1979). Thus, there was nothing so inherently improper in the redirect testimony to require a mistrial.

The defendant argues that by denying his counsel's motion to withdraw, the district court placed counsel in the untenable position of either leaving the police officer's redirect testimony unrebutted or testifying on behalf of his own client. However, even if the court's ruling denied defense counsel the opportunity to rebut the police officer's testimony, there is no indication that the court's ruling prejudiced the defendant. The district court concluded that the entire fingerprinting issue was a minor collateral matter, and its conclusion is supported by the record.[2]

### B.

■ The defendant asserts that the district court erred in admitting, over objection, testimony by the victim and her mother that she moved out of her apartment and into her parents' home after the crime occurred and that she was fearful and distraught for several months after the assault. The district court admitted the testimony on the ground that it was evidence of the victim's state of mind within the meaning of CRE 803(3).[3] The preliminary question is whether these statements were inadmissible under the hearsay rule. The victim's testimony about her own state of mind is not hearsay. Furthermore, the statements of the victim's mother properly were admitted under the state of mind exception to the hearsay rule in CRE 803(3).

The critical question is not whether the evidence was hearsay but rather whether evidence of the victim's conduct after the crime was relevant to an issue at trial. Determinations of relevancy are in the first instance reserved to the discretion of the trial court, and the trial court's decision will not be reversed unless that discretion was abused. *People v. Lowe,* 660 P.2d 1261 (Colo.1983).

■ There are sound reasons for viewing with some skepticism the type of testimony in question here. Evidence that the victim was generally nervous and afraid after an alleged crime is not necessarily relevant to the question whether the crime was committed by the defendant. Even where the victim's state of mind is relevant for other purposes, such as whether a crime occurred, there is danger that the prejudicial character of the evidence may overshadow its probative value. CRE 403. In this case, however, the admission of the state-of-mind evidence did not constitute an abuse of the district court's discretion. As the court determined, the evidence substantiated the credibility of the victim on the important issue of whether she consented to a sexual relationship with the defendant. *Cf. State v. Thomas,* 130 Ariz. 432, 636 P.2d 1214 (1981) (evidence of victim's personality changes after incident relevant and admissible in prosecution for sexual abuse and sexual conduct with a minor).

---

**2.** Because of our conclusion that the district court's admission of the challenged response was within its discretion and that the defendant in any event has failed to show how he was prejudiced by the unrebutted response, we need not address the propriety of the district court's offer to permit defense counsel to testify about the stipulation.

**3.** CRE 803 provides that

The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ... (3) ... A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)....

In order to fall within the coverage of this rule, the statement must describe the declarant's mental or emotional condition at the time the statement was made. *See McCormick on Evidence,* Ch. 29, § .294 (3d Ed.1984).

Our review of the record persuades us that the state-of-mind evidence was not so inflammatory or repetitive that the defendant was unduly prejudiced by its admission. We therefore conclude that the district court did not commit reversible error in admitting the evidence of the victim's mental and emotional state after the crime.[4]

## II.

### A.

The defendant challenges his sentence on a number of constitutional grounds. First, he argues that the sentencing provisions of section 18–1–105(9)(a)(I), 8 C.R.S. (1985 Supp.) work a denial of equal protection of the laws when applied to a defendant convicted of first degree sexual assault as a class 2 felony under section 18–3–402(2)(c), 8 C.R.S. (1978).[5]

Section 18–3–402(2), 8 C.R.S. (1978) provides that "[s]exual assault in the first degree is a class 3 felony, but it is a class 2 felony if: ... (c) The actor is armed with a deadly weapon and uses the deadly weapon to cause submission of the victim." The presumptive sentencing range for class 2 felonies is eight to twelve years. § 18–1–105(1)(a)(I), 8 C.R.S. (1985 Supp.). However, subsection (9)(a) of section 18–1–105 lists six circumstances that require a court "to sentence the defendant to a term greater than the maximum in the presumptive range, but not more than twice the maximum term authorized in the presumptive range for the punishment of a felony." One of the circumstances included in subsection (9)(a) is the defendant's conviction of a crime of violence under section 16–11–309, 8 C.R.S. § 18–1–105(9)(a)(I). A crime of violence under section 16–11–309(2)(a)(I), 8 C.R.S. (1985 Supp.), is defined as "a crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission of," among other things, "sexual assault."[6] Section 16–11–

---

**4.** In admitting evidence of the victim's emotional and mental state after the crime, the district court also relied on the ground that the victim's testimony could be considered a prior consistent statement, within the scope of CRE 801(d)(1)(B), offered to rebut the implication that the victim fabricated her testimony concerning the crime. CRE 801(d) provides that

A statement is not hearsay if—(1) ... The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive....

Because of our resolution of this issue, we need not address whether the testimony complained of fits within the definition of prior consistent statements under CRE 801(d)(1)(B).

**5.** The fourteenth amendment to the United States Constitution provides in part that "No state shall deny to any person within its jurisdiction the equal protection of the laws." A similar guarantee is implicit in the due process clause of the state constitution. Colo. Const., art. II, § 25. *People v. Marcy*, 628 P.2d 69 (Colo.1981); *People v. Taggart*, 621 P.2d 1375 (Colo.1981); *Heninger v. Charnes*, 200 Colo. 194, 613 P.2d 884 (1980).

**6.** Section 16–11–309(2)(a)(I), 8 C.R.S. (1985 Supp.) provides

"Crime of violence" means a crime in which the defendant used, or possessed and threatened the use of, a deadly weapon during the commission or attempted commission of any crime committed against an elderly or handicapped person or of a crime of murder, first or second degree assault, kidnapping, sexual assault, robbery, first degree arson, first or second degree burglary, escape, or criminal extortion, or during the immediate flight therefrom, or the defendant caused serious bodily injury or death to any person, other than himself or another participant, during the commission or attempted commission of any such felony or during the immediate flight therefrom.

In 1985, the General Assembly added a new section to the felony sentencing statute. Section 18–1–105(9)(e)(I), 8 C.R.S. (1985 Supp.) provides:

If the defendant is convicted of the class 2 felony of sexual assault in the first degree under section 18–3–402(3), the court shall be required to sentence the defendant to a term greater than the maximum in the presumptive range, but not more than twice the maximum term authorized in the presumptive range for the punishment of that class of felony.

A new section was also added to the sexual assault statute in 1985. Section 18–3–402(4), 8 C.R.S. (1985 Supp.) declares

If a person is convicted of sexual assault in the first degree pursuant to subsection (3) of this section, the court shall sentence the de-

309(1)(a) repeats the mandate that any person convicted of a crime of violence "shall be sentenced pursuant to section 18–1–105(9), C.R.S. to a term of incarceration greater than the maximum in the presumptive range, but not more than twice the maximum term, provided for such offense in section 18–1–105(1)(a), C.R.S....."[7]

■ The defendant argues that, when use of a deadly weapon during a first degree sexual assault results in conviction of a class 2 felony under section 18–3–402(3)(c), equal protection is denied where the use of a deadly weapon is also the basis for the imposition of a sentence in the aggravated range under section 18–1–105(9)(a)(I). In support of his argument, the defendant cites *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975). However, *Calvaresi* does not address the situation here. In *Calvaresi*, the defendant was convicted under the portion of the manslaughter statute directed to reckless conduct that causes the death of another person. Calvaresi maintained that there was no difference between the reckless conduct proscribed by the manslaughter statute and the conduct defined as criminally negligent homicide that was subject to a less

severe punishment. We agreed with his argument that "where two statutes with unequal penalties proscribe the same act, the defendant convicted under the harsher statute is denied equal protection of the law." 188 Colo. at 281, 534 P.2d at 318. *See also People v. Mumaugh*, 644 P.2d 299 (Colo.1982); *People v. Marcy*, 628 P.2d 69 (Colo.1981); *People v. Bramlett*, 194 Colo. 205, 573 P.2d 94 (1977), *cert. denied*, 435 U.S. 956, 98 S.Ct. 1590, 55 L.Ed.2d 808 (1978). Under the sentencing scheme here, however, all defendants convicted of both first degree sexual assault as a class 2 felony and a crime of violence because they used a deadly weapon in committing the crime must be sentenced in the aggravated range. Thus, it cannot be said that the sentencing statutes permit different degrees of punishment for persons in the defendant's situation.[8]

## B.

The defendant next argues that the sentence imposed in this case violated constitutional guarantees against double jeopardy, which are intended, among other things, to protect a defendant against multiple punishments for the same offense.[9] *Brown v.*

fendant in accordance with section 18–1–105(9)(e). A person convicted of sexual assault in the first degree pursuant to subsection (3) of this section shall not be sentenced under the crime of violence provisions of section 16–11–309(2) C.R.S.

7. While the sentencing scheme here requires that persons in the defendant's position be sentenced to a term in the aggravated range for a class 2 felony, the violent crime statute authorizes modification of the sentence under certain circumstances. Section 16–11–309(1)(a) provides that, within 90 days after a person has been convicted of a crime of violence and sentenced in the aggravated range under section 18–1–105(9), the department of corrections shall file with the court a diagnostic report on the offender. The court then, at its discretion and in consideration of unique aspects of the case or exceptional extenuating circumstances, may modify the original sentence effective after the defendant has been in custody 120 days. The modification "may include probation if the person is otherwise eligible therefor." The 1985 amendments to the felony sentencing statute included a provision eliminating the discretion of the judge to grant probation to a defendant

convicted of first degree sexual assault as a class 2 felony under section 18–3–402(3). § 18–1–105(9)(e)(II), 8 C.R.S. (1985 Supp.).

8. The defendant also asserts that the prosecution has the discretion to charge a crime of violence and that the exercise of that discretion in this case resulted in a denial of equal protection. The defendant presents no evidence to support this bare assertion. Prosecutorial discretion in the decision of whether to charge a defendant with a particular offense, in the absence of evidence showing selectivity in enforcement based on invidious classification, does not amount to a denial of equal protection. *People v. Renfrow*, 193 Colo. 131, 564 P.2d 411 (1977) (selective use of habitual criminal act); *People v. Bergstrom*, 190 Colo. 105, 544 P.2d 396 (1975) (same); *People v. Thomas*, 189 Colo. 490, 542 P.2d 387 (1975) (same).

9. The fifth amendment to the United States Constitution provides that "No person ... shall ... be subject for the same offense to be twice put in jeopardy of life or limb." Article II, section 18 of the Colorado Constitution provides: "No person ... shall ... be twice put in jeopardy for

*Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *People v. Scott,* 176 Colo. 86, 489 P.2d 198 (1971). While we recognize that the sentencing scheme involved here could be viewed as resulting in cumulative punishment for the same conduct imposed under two separate statutory provisions, we conclude that the result under the scheme does not amount to the multiple punishment prohibited by double jeopardy provisions.

In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the United States. Supreme Court stated that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *See also People v. Williams,* 651 P.2d 899 (Colo.1982). In light of this analysis, the statutory provisions at issue are directed to the same conduct. The proof necessary to raise first degree sexual assault from a class 3 to a class 2 felony— proof that the defendant used a deadly weapon in the commission of the crime—is identical to the proof that requires a sentence in the aggravated range.

However, the fact that two statutes address the same conduct does not automatically preclude, as a violation of double jeopardy provisions, "the imposition, in a single trial, of cumulative punishments pursuant to those statutes." *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). At issue in *Missouri v. Hunter* was a Missouri statute providing that any person committing a felony by means of a deadly weapon was also guilty of the crime of armed criminal action.

Conviction of armed criminal action was to be punished by three years' imprisonment in addition to the penalty prescribed for the underlying felony. The Missouri Supreme Court determined that the armed criminal action statute defined the same offense as the underlying felony involved in the case—first-degree robbery—and held that the imposition of punishment for both offenses violated the double jeopardy clause. The United States Supreme Court reversed, stating that the double jeopardy clause of the fifth amendment "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Id.* at 366, 103 S.Ct. at 678. The Court went on to discuss the assumption that ordinarily the legislature does not intend to punish the same conduct by two different statutes and the concomitant rule that cumulative punishments for the same conduct are not permitted in the absence of clear legislative authorization for such punishment. However, the Court concluded that

> Where ... a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Id.* at 368–69, 103 S.Ct. at 679.

*Missouri v. Hunter* requires us to reject the defendant's argument that the sentence imposed in this case violated the double jeopardy clause of the federal constitution. Because the crime of violence statute, like the armed criminal action statute in *Hunter,* is a sentencing provision, *People v. Eggers,* 196 Colo. 349, 585 P.2d 284 (1978);[10]

---

the same offense. If the jury disagree, or if the judgment be arrested after the verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy."

**10.** Because of the alternative form of its holding, *People v. Eggers,* 196 Colo. 349, 351, 585

P.2d 284, 186 (1978), implies that if the violent crime statute enhanced punishment, the statute might violate equal protection. At the time Eggers was sentenced, the violent crime statute mandated minimum sentencing, and foreclosed indeterminate sentencing and probation. After *Eggers* was decided, the General Assembly

*Brown v. District Court,* 194 Colo. 45, 569 P.2d 1390 (1977), it is obvious that the legislature intended to authorize punishment for a crime of violence in addition to conviction and punishment for substantive offenses.[11] The question whether punishment for a crime of violence is consistent with legislative intent under the circumstances of this case must be resolved by looking to the relevant statutory language. Sections 18-1-105(9)(a)(I) and 16-11-309 require a sentence in the aggravated range for the substantive offense where the offense is also a crime of violence. A crime of violence includes a sexual assault involving the use of a deadly weapon. The statute that mandates the sentence thus makes specific reference to the crime for which the defendant was convicted. By way of comparison, in a typical *Blockburger* situation the same conduct constitutes two distinct substantive offenses, neither of which refers to the other. Thus, the intent of the legislature to authorize cumulative punishment under the statutes at issue is simply unmistakable.

■ Although we are not bound to adopt the reasoning of the United States Supreme Court in construing the scope of the protection afforded by the double jeopardy provision of our state constitution, we find no basis under Colorado case law[12] or the double jeopardy language in the Colorado Constitution for diverging from the Court's analysis in *Missouri v. Hunter.* Applying that analysis to the facts before us, we hold that the imposition of sentence under section 18-1-105(9)(a)(I) on a defendant convicted of first degree sexual assault under section 18-3-402(3)(c) does not constitute double jeopardy.

### C.

The defendant's final constitutional argument is that the sentencing scheme deprived him of due process and equal protection of the laws because the scheme is not founded upon a rational distinction between offenses. It appears that this argument is based, in part, upon the misapprehension that a defendant in the "same factual posture" as the defendant here might not receive a sentence in the aggravated range

---

amended the violent crime statute to preclude sentencing within the presumptive range. Ch. 211, secs. 1 & 2, §§ 18-1-105(9)(a) & 16-11-309(1), 1981 Colo. Sess. Laws 970-971. We believe that the amended violent crime statute comes within the common understanding of what is meant by "enhanced punishment." Our holding in this case, that the violent crime statute does not violate equal protection, encompasses the sentence enhancement aspect of the statute. To the extent *Eggers* can be read as implying that the violent crime statute as a sentence enhancer may violate equal protection, we reject that implication.

11. In *Missouri v. Hunter,* Justice Marshall, in dissent, argued that irrespective of legislative intent, imposing punishment for one course of conduct under separate statutes constitutes double jeopardy where convictions under the separate statutes each carry with them collateral consequences. 459 U.S. at 372-373, 103 S.Ct. at 681. The application of the crime of violence statute in general does not raise such concerns. A "conviction" under that sentencing statute does not involve collateral consequences apart from the consequences of the substantive offense. *People v. Russo,* 713 P.2d 356 (Colo. 1986); *cf. People v. Lowe,* 660 P.2d 1261 (Colo. 1983).

12. In *People v. District Court,* 673 P.2d 991 (Colo.1983), we held that where a defendant's initial sentence was illegal, this court has jurisdiction to review the sentence, even if the review may result in an increased sentence, without violating the defendant's right to be free from double jeopardy under either the federal or state constitutions. We observed that a narrow interpretation of "the effect of double jeopardy in sentencing protects society's legitimate interest in adequate sentences for convicted criminals and in the overall uniformity of sentences imposed on similarly situated violators." *People v. District Court,* 673 P.2d at 997. In *People v. Quintana,* 634 P.2d 413, 418, and 420 (Colo.1981), we held that retrial of the habitual criminal charge was prohibited despite an erroneous dismissal of the charge after jeopardy attached. In *Quintana* we relied on *People v. Paulsen,* 198 Colo. 458, 601 P.2d 634 (1979), which departed from the reasoning of *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) in interpreting the scope of the double jeopardy clause of the Colorado constitution. We recognized in *Quintana* that the double jeopardy clause "does not apply to sentencing decisions after retrial to the same degree that it prohibits redeterminations of guilt or innocence." 634 P.2d at 618.

when convicted of a class 2 felony and a crime of violence. We already have determined that all persons convicted of first degree sexual assault and a crime of violence for using a deadly weapon during the assault must be sentenced in the aggravated range of more than 12 but not more than 24 years.

■ The defendant's argument also suggests that the difference between the penalty imposed on him, fourteen years, and the penalty prescribed for a person convicted of first degree sexual assault as a class 3 felony, four to eight years, is not justified by any substantial difference in the nature of the crimes. The factor that resulted in the imposition of a sentence in the not less than 12 but not more than 24 year range in this case is the use of a deadly weapon. We recognize that "statutory classifications of crimes must be based on differences that are real in fact and reasonably related to the purposes of the legislative enactments." *People v. Wilhelm*, 676 P.2d 702, 704 (Colo.1984). *See also People v. Velasquez*, 666 P.2d 567 (Colo.1983); *People v. Mann*, 646 P.2d 352 (Colo.1982). However, the General Assembly may establish more severe penalties for acts that it believes have graver consequences. *See, e.g., People v. Thatcher*, 638 P.2d 760, 766 (Colo.1982). The legislature rationally could perceive that use of a deadly weapon during the course of a first degree sexual assault—the conduct that mandated the defendant's aggravated sentence—is more reprehensible and dangerous than commission of a first degree sexual assault without the use of a deadly weapon. Therefore, the distinction between the sentence mandated for the defendant here and the four to eight year punishment prescribed for the class 3 felony of first degree sexual assault at the time the defendant was convicted is consistent with the guarantees of equal protection and due process.

Our holding conflicts with the decision of the court of appeals in *People v. Montoya*, 709 P.2d 58 (Colo.App.1985), *cert. granted* November 11, 1985, in which the court held that the sentencing scheme at issue here—although raised in the context of first degree assault where the defendant caused serious bodily injury by means of a deadly weapon—violated equal protection. The court of appeals concluded that, because the mandatory sentencing provision for use of a deadly weapon duplicated the element of first degree assault requiring use of a deadly weapon, the defendant's sentence was increased without a rational basis. For the reasons set forth in this opinion, we disapprove the court of appeals' conclusion in *Montoya* that the sentencing scheme for violent crime involving the use of a deadly weapon violates equal protection. Whether evaluated under equal protection or due process standards, the sentencing scheme here is rational. It does no more than set a penalty range for particular crimes involving use of a deadly weapon.

The court of appeals recently has held that an element of a crime may not be considered as an extraordinary or aggravating circumstance that would justify a sentence beyond the presumptive range. In *People v. Manley*, 707 P.2d 1021 (Colo. App.1985), the court of appeals decided that injury to the victim in a vehicular assault case could not support a discretionary sentence in the relevant aggravated range because serious bodily injury was an element of the substantive offense. Similarly, in *People v. Russell*, 703 P.2d 620 (Colo.App.1985), the court reversed a sentence in the aggravated range for the crime of escape imposed on the basis of section 18–1–105(9)(a)(V) that provides that commission of a felony while under lawful confinement or after escaping from lawful confinement is an extraordinary aggravating circumstance.

Insofar as the court of appeals in *Manley* and *Russell* did not recognize a blanket constitutional prohibition against basing an aggravated sentence on an element of the crime, those decisions are consistent with our holding in this case. In both *Manley* and *Russell* the court of appeals determined that there was a question whether the legislature would have considered an

element of an offense to be an extraordinary aggravating circumstance. The court resolved the question in favor of the defendants by applying the interpretive rule of lenity toward the accused. Although section 18–1–105(9)(a) lists conviction of a crime of violence as an extraordinary aggravating circumstance, as we have demonstrated the language of the crime of violence statute itself leaves no doubt as to legislative intent and thus no room for operation of the rule of lenity.

The judgment of conviction and the sentence entered by the district court are affirmed.

ERICKSON, J., specially concurs.

ERICKSON, Justice, specially concurring:

I concur but write separately to point out the limited significance of the mistrial issue raised by defense counsel and addressed in part I.A. of the opinion. I concur in the result reached in parts II.B. and C. of the opinion but for somewhat different reasons.

### I.A.

The prosecution contended that the defendant gained entrance to the victim's apartment through the removal of a screen on a window. Neither his fingerprints nor those of the caretaker were on the screen and a stipulation was made to permit testimony as to the absence of fingerprints without further foundation. The defendant's theory of the case was that the defendant knocked on the victim's door, and that the victim admitted him and then consented to and voluntarily engaged in sexual intercourse. The defendant did not deny that he was in the apartment. The absence of the defendant's fingerprints on the screen, to the extent relevant, supported the defendant's theory that the victim voluntarily admitted him to her apartment. The motion for a mistrial was predicated on proposed testimony beyond the stipulation on fingerprints and would not have enhanced the defendant's case. In my view, the errors asserted and addressed in part

I.A. of the opinion totally lack merit and do not justify comment. *See People v. Gladney*, 194 Colo. 68, 570 P.2d 231 (1977) (reviewing court will not engage in abstract speculation to find prejudicial error).

### II.B.

I agree with the court's conclusion that the sentence imposed in this case did not violate the double jeopardy provisions of the United States or Colorado Constitutions. Under *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the imposition of cumulative punishments for the same offense does not violate protections afforded by the double jeopardy clause if the legislature intended to authorize the additional punishment. Here, there can be no question that the legislature intended to authorize punishment for a crime of violence in addition to the punishment for first-degree sexual assault.

### II.C.

In part II.C., the majority holds that additional punishment predicated upon the commission of a crime of violence is not contrary to due process and equal protection of the laws. I agree. However, I would go no further in this case than to conclude that the General Assembly intended and, consistent with constitutional protections, provided for enhanced punishment. To the extent that *People v. Montoya*, 709 P.2d 58 (Colo.App.1985), is contrary to our holding, the case should be disapproved. The rule of lenity relied upon in *People v. Manley*, 707 P.2d 1021 (Colo.App. 1985), is inapplicable because the legislature's intent is apparent on the face of the crime of violence statute.