The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

David C. WELLS, Defendant–Appellant.

No. 87SA291.

Supreme Court of Colorado,
En Banc.

June 19, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia D. Jones, Asst. Atty. Gen., Appellate Section, Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for defendant-appellant.

MULLARKEY, Justice.

The defendant, David C. Wells, appeals from the district court's order denying his Crim.P. 35(c) motion to vacate his judgments of conviction and sentences in two cases of aggravated robbery. The appeal was transferred to this court from the court of appeals pursuant to section 13-4-102(1)(b), 6A C.R.S. (1987), because Wells challenges the constitutionality of the violent crime sentencing provisions of section 16–11–309(1)(a), 8A C.R.S. (1986). Comparing section 16–11–309(1)(a), the provision under which he was sentenced, to section 16–11–309(1)(b), concerning certain crimes against the elderly or handicapped, he contends that the statutory sentencing scheme violates the equal protection guarantees of article II, section 25 of the Colorado Constitution because a lesser sentence is provided for crimes against the elderly or handicapped than is provided for crimes of violence. The district court rejected his contention and we affirm.

I.

Wells was charged in six cases of robbery. After he was tried and convicted of aggravated robbery and a crime of violence in one case, he pled guilty to the same charges in a second case and the remaining cases were dismissed. Wells then was sen-

tenced in the two cases to two concurrent fourteen year prison terms. In the matter now before us, he filed a motion to vacate his judgments of conviction and sentences, which the trial court denied. Construing section 16–11–309, the trial court disagreed with Wells' contention that subsection (1)(b) provides a lesser sentence for a person convicted of a crime against an elderly or handicapped person than the sentence imposed under subsection (1)(a) concerning a conviction of a crime of violence. Section 16–11–309 states in relevant part: [1]

(1)(a) Except as provided in paragraph (b) of this subsection (1), any person convicted of a crime of violence shall be sentenced pursuant to section 18–1–105(9), C.R.S., to a term of incarceration greater than the maximum in the presumptive range, but not more than twice the maximum term, provided for such offense in section 18–1–105(1)(a), C.R.S., without suspension; except that, within ninety days after he has been placed in the custody of the department of corrections, the department shall transmit to the sentencing court a report on the evaluation and diagnosis of the violent offender, and the court, in a case which it considers to be exceptional and to involve unusual and extenuating circumstances, may thereupon modify the sentence, effective not earlier than one hundred twenty days after his placement in the custody of the department. Such modification may include probation if the person is otherwise eligible therefor. . . .

(b) Any person convicted of a crime against an elderly or handicapped person in which he used, or possessed and threatened the use of, a deadly weapon shall be sentenced to at least the maximum term of incarceration in the presumptive range provided for such offense in section 18–1–105(1)(a), C.R.S., without suspension. Thereafter, the provisions of paragraph (a) of this subsection (1) shall apply.

The trial court reasoned that a person sentenced under subsection (1)(b) actually was punished more harshly than a person sentenced under subsection (1)(a). By its terms, subsection (1)(a) allows the trial court to reconsider its sentence after the defendant has been incarcerated for at least 120 days and to reduce that sentence. In an appropriate case, the trial court may reconsider the sentence and decide to place the defendant on probation. By contrast, the trial court read subsection (1)(b) to permit no such modification after sentencing. It found that a defendant sentenced under subsection (1)(b) must be sentenced to at least the maximum number of years in the presumptive sentencing range and the sentence could not be reconsidered as provided in subsection (1)(a). Hence, the trial court concluded that the sentencing scheme was rational and did not violate the defendant's constitutional rights. Wells then brought this appeal.

## II.

The sentencing statute for crimes of violence, like all other statutes, is presumed to be constitutional. *See, e.g., Lee v. Smith,* 772 P.2d 82, 85 (Colo.1989). Wells, as the party challenging the statute, bears the burden to show beyond a reasonable doubt that the statute is unconstitutional. *Id.; Parrish v. Lamm,* 758 P.2d 1356, 1364 (Colo.1988).

The Attorney General argues that we need not engage in an equal protection analysis because the defendant Wells, who was sentenced under subsection (1)(a), is not similarly situated to a defendant who is sentenced under subsection (1)(b). We would agree with this proposition if subsections (1)(a) and (1)(b) defined different crimes. Two defendants convicted of different crimes are not similarly situated and may be subjected to different penalties without implicating equal protection concerns. *See, e.g., People v. Owens,* 670 P.2d 1233 (Colo.1983) (no equal protection problem because unlawful use of incendiary device statute proscribes different conduct

---

**1.** Since the events which gave rise to this case, subsections 16–11–309(1)(a) and (b) have been amended. *See* § 16–11–309(1)(a) and (b), 8A C.R.S. (1988 Cum.Supp.). This opinion does not address the effect of the amendments.

than that covered by fourth degree arson statute). Here, however, subsections (1)(a) and (1)(b) do not define separate crimes but are sentence enhancers. *See People v. Haymaker,* 716 P.2d 110, 118 (Colo.1986). Thus, Wells is similarly situated to a person sentenced under subsection (1)(b) because both have been convicted of armed robbery. *See People v. Simmons,* 723 P.2d 1350 (Colo.1986) (applying equal protection analysis to sentence enhancement statute); *People v. Reed,* 723 P.2d 1343 (Colo.1986) (same). The identity of the victim as elderly or handicapped is not relevant to proving the elements of armed robbery but is relevant to determining if the penalty enhancement of subsection (1)(b) applies. Hence, subsections (1)(a) and (1)(b) properly may be subjected to an equal protection analysis.

■ As Wells concedes, his equal protection challenge must be evaluated under the rational basis test. Thus, the statute must be upheld if it is rationally related to a legitimate state interest. *See Austin v. Litvak,* 682 P.2d 41, 50 (Colo.1984). In the context of sentencing statutes, we have recognized several times that "the General Assembly may establish more severe penalties for acts that it believes have graver consequences." *People v. Haymaker,* 716 P.2d at 118; *see also People v. Mozee,* 723 P.2d 117, 126 (Colo.1986).

Wells argues that the sentencing scheme is not rational because a lesser sentence may be imposed on a defendant convicted of the aggravated robbery of an elderly or handicapped person and a greater sentence may be imposed on a defendant like Wells who is convicted of the aggravated robbery of a person who is neither elderly nor handicapped. Thus, he contends that crimes against the elderly or handicapped, which should be considered to be more serious crimes, have the potential to be punished less severely than other crimes of violence.

Wells' argument apparently turns on what he sees as a possible one day difference in sentencing for crimes of violence compared to sentencing for crimes committed against the elderly or handicapped. Under subsection (1)(a) (crimes of violence),

a convicted defendant must be sentenced "to a term of incarceration *greater than the maximum* in the presumptive range, but not more than twice the maximum term." § 16–11–309(1)(a) (emphasis added). Under subsection (1)(b) (crimes against the elderly or handicapped), a convicted defendant must be sentenced "to *at least the maximum* term of incarceration in the presumptive range." § 16–11–309(1)(b) (emphasis added). In this case, aggravated robbery is a class 3 felony. § 18–4–302, 8B C.R.S. (1986). The presumptive range of penalties for class 3 felonies is four to eight years. § 18–1–105(1)(a)(I), 8B C.R.S. (1986). Under Wells' construction of the two subsections, subsection (1)(a) requires a sentence of more than eight years (*i.e.,* at least eight years and one day) whereas subsection (1)(b) requires a sentence of at least eight years.

However, equal protection does not impose standards of mathematical precision and a one day theoretical difference in sentencing is not sufficient to prove an equal protection violation. Further, we reject the defendant's proposed construction of the statute. Subsections (1)(a) and (1)(b) were enacted by different bills passed in the same legislative session and became effective on the same day. *See* Ch. 198, sec. 1, § 16–11–309(1)(b), 1981 Colo.Sess.Laws 944, 945 and Ch. 211, sec. 2, § 16–11–309(1)(a), 1981 Colo.Sess.Laws 970, 971. Contrary to Wells' suggestion, we cannot view the two subsections in isolation. Rather, we must construe the two together and harmonize them if possible. *See* § 2–4–201(1)(b), 1B C.R.S. (1980); *Allen v. Charnes,* 674 P.2d 378 (Colo.1984) (statute to be read as a whole in context of broad legislative scheme).

As defined, the term "crime of violence" includes but is not limited to "any crime committed against an elderly or handicapped person" in which the defendant "used, or possessed and threatened the use of, a deadly weapon." § 16–11–309(2)(a)(I). By its terms, subsection (1)(a) applies to such crimes against the elderly or handicapped "[e]xcept as provided in" subsection

(1)(b). The latter subsection applies only if the victim was elderly or handicapped and the defendant "used, or possessed and threatened the use of, a deadly weapon." Obviously, subsection (1)(b) can be harmonized easily with subsection (1)(a) by sentencing the defendant to at least eight years and one day. Such sentence meets both the subsection (1)(a) requirement of a sentence greater than eight years and the subsection (1)(b) requirement of a sentence of at least eight years. The concurrent fourteen year sentences which the defendant received would satisfy both subsections, assuming both were applicable.

We recognize that the plain language of the statute is ambiguous as to the interrelation of subsections (1)(a) and (1)(b). Subsection (1)(a) is prefaced by the phrase "[e]xcept as provided in paragraph (b) of this subsection" and subsection (1)(b), after describing the applicable penalty, concludes with the statement that "[t]hereafter, the provisions of paragraph (a) of this subsection (1) shall apply." The trial court interpreted the statute as providing that, if a case falls within subsection (1)(b), the trial court has no discretion to modify the sentence under the provisions of subsection (1)(a) so as to reduce the sentence below the maximum of the presumptive range. This interpretation is supported by the 1981 legislative history of S.B. 367, which resulted in subsection (1)(b). The bill's sponsors repeatedly and emphatically pointed out that the sentence imposed on a defendant under subsection (1)(b) could not be reduced below the maximum of the presumptive range. *See* Tape Recording of Testimony before Senate Judiciary Committee on Senate Bill 367, March 23, 1981, 53rd General Assembly. The legislature clearly intended that such defendants be sentenced to the specified period of incarceration with no possibility of sentence modification under the provisions of subsection (1)(a). Thus, we conclude that the legislature intended to treat crimes which fell within subsection (1)(b) more severely because the victims were elderly or handicapped and the statutory scheme does so.

Accordingly, we reject the defendant's constitutional challenge and we affirm the judgment of the trial court.