## No. 28130

## The People of the State of Colorado v. Louis Tenorio

(590 P.2d 952)

Decided February 13, 1979.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, James S. Russell, Assistant, David Schwartz, Assistant, for plaintiff-appellee.

John A. Purvis, Acting State Public Defender, William B. Marshall, Jr., Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The defendant Tenorio was convicted by a jury of Possession of a Weapon by a Previous Offender in violation of section 18-12-108, C.R.S. 1973 (1976 Supp.). He seeks reversal on the grounds that this statute unconstitutionally delegates the Colorado General Assembly's power to define crimes to the legislature of another state and denies him equal protection of the laws. He further alleges that the trial court erred in admitting documentary evidence of his prior felony conviction, in denying his tendered jury instructions, and in admitting into evidence certain testimony of police officers. Finally the defendant asserts that the evidence was

insufficient to support his conviction. We hold that section 18-12-108 is constitutional, reject the defendant's other allegations of error, and hold that the evidence was sufficient to support the conviction. Therefore the conviction is affirmed.

Evidence at trial established the defendant's "previous offender" status, as the predicate for the instant charge, by proving that in April, 1973, the defendant had pleaded guilty in California to second-degree burglary[1] and a judgment of guilty had been entered.

As proof that the defendant, as a previous offender, had committed the instant crime by possessing a weapon, testimony established that on June 1, 1976, Denver police officers Hunter and Niemand responded to a radio call which described an "incident" in Barnum Park. Upon arrival at the park, the officers observed the defendant, another adult male, an adult female and a child sitting together on the grass. The defendant matched the police radio description.

Because the radio report had mentioned a weapon, the officers got out of their car with pistols drawn and pointed at the defendant. As they approached, the defendant stood up and reached for a white purse lying on the grass near him. At that time, Officer Hunter order the defendant not to pick up the purse. Nevertheless he did pick it up, then partially turned his back to the approaching officers. Officer Hunter, by this time within reach of the defendant, ordered him not to put his hand inside the purse. Despite that order, the defendant reached inside and withdrew a revolver. Officer Hunter then grabbed the defendant's arm and took possession of the gun, the purse, a box of ammunition found inside the purse and another found lying on the grass nearby.

At trial the defendant presented no evidence. He was found guilty of possession of a weapon by a previous offender and was sentenced to a term not to exceed five years in the state penitentiary.

## I. CONSTITUTIONALITY OF SECTION 18-12-108.

A. *Delegation of Power.*

The defendant argues that section 18-12-108, C.R.S. 1973 (1976 Supp.), unconstitutionally delegates, to the Congress and to the legislatures of other states, the Colorado General Assembly's power to define crimes. In essence, the defendant asserts that the effect of the statute is to allow other governments to define crimes in Colorado. We decline to accept this contention.

Section 18-12-108 states:

*"Possession of weapons by previous offenders.* Any person previously convicted of burglary, arson, or a felony involving the use of force or violence or the use of a deadly weapon, or attempt or conspiracy to commit

---

[1] *West's Ann. Calif. Penal Code* §§ 459, 460 (1972).

such offenses, under the laws of the United States of America, the state of Colorado, or another state, within the ten years next preceding or within ten years of his release or escape from incarceration, whichever is greater, who possesses, uses, or carries upon his person a firearm or other weapon mentioned in section 18-1-901(3)(h) or section 18-12-101 to 18-12-106 commits a class 5 felony. A second or subsequent offense under this section is a class 4 felony."

Only the Colorado General Assembly has the power to define crimes in Colorado. *Colo. Const.*, Art. III; *People v. Arellano,* 185 Colo. 280, 524 P.2d 305 (1974); *Casey v. People,* 139 Colo. 89, 336 P.2d 308 (1959). Our criminal laws can be enacted only by those elected to represent the people of Colorado. The General Assembly cannot constitutionally delegate this power even to another branch of our own state's government. *Casey v. People, supra.* A fortiori the General Assembly's authority cannot be delegated to any branch of another state's government or to the Congress.

Contrary to the defendant's contention, however, the General Assembly has not delegated to other legislatures the power to define Colorado crimes. In section 18-12-108 the Colorado General Assembly defined the crime here charged. One element of that crime is a prior conviction of a designated crime under Colorado law, federal law, or the law of any sister state. *People v. Fullerton,* 186 Colo. 97, 525 P.2d 1166 (1974).

The prior conviction element of this crime is merely a fact to be proved at trial. While the General Assembly might have set forth detailed definitions covering all the state and federal crimes which would qualify one as a "previous offender," there was no need to follow that wasteful, verbose technique. Nor was it essential that our General Assembly meet all the technical requirements of the legal doctrine of incorporation by reference by specifically describing the latest version of each intended crime definition from another jurisdiction. Here the broad, general intent was merely to delineate a category of prior crimes whose general nature, in the General Assembly's judgment, was so serious that their perpetrators could not safely be allowed to possess weapons in Colorado.

Reference by name or description to crimes committed in other jurisdictions is a proper means for the Colorado General Assembly to define which prior crimes satisfy the "previous offender" element of this statute. Such references to crimes committed elsewhere do not constitute delegation of Colorado's legislative power. Rather our General Assembly, in its considered judgment, has declared that certain forms of dangerous criminal conduct, described in commonly understood terms, can serve as the "previous offense" foundation upon which may be predicated convictions for violating section 18-12-108. And this is true regardless of where the prior crime occurred or whether it was there defined exactly as its counterpart crime in Colorado.

■ This method of defining prior crimes in other jurisdictions which are serious enough to render one a "previous offender" falls short of incorporating by reference the statutes of other jurisdictions. The language here merely describes and identifies past conduct rather than incorporating statutes by reference.[2] We hold that this is a legitimate and constitutional means of accomplishing the General Assembly's obvious purpose.

B. *Equal Protection.*

The defendant asserts that section 18-12-108, as applied to him, violates the equal protection provisions of the Fourteenth Amendment to the United States Constitution. He argues that the statute, by allowing persons similarly situated to be treated differently, creates an unreasonable and arbitrary classification.

Defendant was convicted in California for burglarizing a Montgomery Ward store. In California, a second-degree burglary was then defined as entry into a store with intent to commit grand or petit larceny or any felony. *West's Ann. Calif. Penal Code* §§ 459, 460 (1972). In Colorado, however, second-degree burglary is defined as breaking an entrance into or *unlawfully entering or remaining* in a building with intent to commit a crime against a person or property. Section 18-4-203, C.R.S. 1973 (emphasis added).

Close comparative analysis of the two statutes reveals that one who has committed two identical acts, one in California and one in Colorado, conceivably could be convicted of burglary in California but not in Colorado. In other words, the "previous offense" element required for conviction under section 18-12-108 could possibly be established by a prior California burglary conviction even though identical misconduct, if perpetrated in Colorado, might not have supported a prior Colorado burglary conviction. The defendant contends that this aspect of the statutory scheme violates equal protection.[3] *U. S. Const.*, amend. XIV.

■ We hold that section 18-12-108 does not deny the defendant equal protection, even though it may permit using a prior burglary conviction in another jurisdiction as the "previous offense" when the same conduct might not have resulted in a burglary conviction if committed in Colorado. The General Assembly has simply defined a class of persons

---

[2] *Cf., United States v. Sharpnack,* 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958) (Congress may assimilate state laws by reference); *Apple v. Denver,* 154 Colo. 166, 390 P.2d 91 (1964) (incorporation into a Colorado statute of the provisions of another Colorado statute by reference); *Thorpe v. Mahin,* 43 Ill.2d 36, 250 N.E.2d 633 (1969) (state legislature created state tax law by incorporating federal tax laws by reference); *accord, First Federal Savings and Loan Ass'n v. Connelly,* 142 Conn. 483, 115 A.2d 455 (1955). *Colo. Const.,* Art. X, section 19 expressly authorizes the General Assembly to define income subject to state income tax by reference to federal laws "whether retrospective or prospective . . . ."

[3] The defendant has standing to raise this issue for in order to prove the crime of burglary in Colorado the prosecution must show an element of the offense which need not be proven to convict of burglary in California.

whose rights to carry weapons in Colorado are curtailed. That class consists of all persons who, by being convicted of designated serious crimes in other jurisdictions, have indicated that they may be dangerous to others when carrying weapons. There is nothing unreasonable, arbitrary or capricious about the classification, and its purpose is well within this state's police power. *See People v. Lake,* 195 Colo. 454, 580 P.2d 788 (1978) (habitual criminal statute); *People v. Parker,* 41 N.Y.2d 21, 359 N.E.2d 348 (1976).

We noted in *People v. Trujillo,* 178 Colo. 147, 150, 497 P.2d 1, 2-3 (1972), that it is clearly in the interest of the public health, safety and welfare to "limit the possession of firearms of those who, by their past conduct, have demonstratd an unfitness to be entrusted with such dangerous instrumentalities . . . ." Through section 18-12-108 the General Assembly has merely made it possible to determine a defendant's "unfitness" by taking into account his prior crimes wherever committed. Surely serious crimes committed outside Colorado are as relevant to determining the risk of allowing one to carry a weapon as are such crimes committed within Colorado. Indeed, had the statutory scheme forbidden only "previous offenders" against *Colorado* laws to carry weapons, while allowing weapons to those who had committed similar crimes elsewhere, there might have been a more serious equal protection problem.

## II. *Documentary Evidence.*

The People, pursuant to Crim. P. 27,[4] introduced into evidence fingerprint cards, a prison photograph of the defendant, and properly certified and attested copies of his California second-degree burglary judgment. This evidence was introduced to establish the defendant's previous California conviction, his identity as the person convicted, and the date of conviction.

The defendant alleges that the introduction of these properly authenticated copies of official public records violated his right to confrontation because he was denied the opportunity to cross-examine witnesses regarding the accuracy of statements contained in the documents. He relies upon *U. S. Const.,* amend. VI and Amend. XIV and *Colo. Const.,* Art. II, section 16. We find no merit in this argument.

These copies of official public records were submitted to prove essential elements of the crime. Although used to prove the truth of the statements they contained, as copies of official public record they were properly admitted under a well-recognized exception to the hearsay rule. Crim. P. 27 (adopting C.R.C.P. 44); *Raullerson v. People,* 157 Colo. 462, 404 P.2d 149 (1965); *Warren v. United States,* 447 F.2d 259 (9th Cir. 1971);

---

[4] Crim. P. 27 adapts for use in criminal proceedings the rule set out in C.R.C.P. 44 to govern admissibility of official records in civil cases.

*Tomlin v. Beto,* 377 F.2d 276 (5th Cir. 1967); *Reed v. Beto,* 343 F.2d 723 (5th Cir. 1965).

The statements found in these copies have all the hallmarks of trustworthiness and reliability. The public officials who prepared them had a duty to be truthful, complete and accurate, and the custodians of the original documents certified the accuracy of the copies of the original records in their official possession.

Because there are, in fact, adequate practical guarantees of trustworthiness, the admission of evidence under this hearsay exception does not violate the defendant's right of confrontation or cross-examination. *Gallegos v. People,* 175 Colo. 553, 488 P.2d 887 (1971); *McDaniel v. United States,* 343 F.2d 785 (5th Cir. 1965).

### III. *Jury Instructions.*

The defendant argues that the trial court erred in refusing to give certain tendered jury instructions. We do not agree.

The defense tendered one instruction telling the jury that if they believed that the defendant misunderstood the officer and, in taking the gun in his hand, was attempting to comply with his faulty understanding of the police officer's orders, the jury should find him not guilty. The trial court refused to submit this instruction to the jury.

It is well-settled in Colorado that a defendant, upon request, is entitled to an instruction on his theory of the case when there is any evidence to support it. *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974); *People v. Travis,* 183 Colo. 255, 516 P.2d 121 (1973). The record here, however, fails to disclose any evidence to support the defendant's theory of the case. The defendant presented no evidence, and the evidence presented by the prosecution does not support an inference that the defendant misunderstood the officer's clear, express orders. Thus the trial court did not err in refusing the defendant's claimed theory of the case instruction.

The defendant next asserts that for the jury to have found him guilty of possessing a weapon in violation of section 18-12-108, C.R.S. 1973 (1976 Supp.), it must have determined that he "intentionally"[5] possessed the weapon and that his act of possession was "voluntary."[6] He contends that the trial court erred in refusing instructions defining these terms as requisite elements of the substantive offense.

To convict one of possessing a weapon, the jury must find, not mere possession, but that the defendant "knowingly" possessed the weapon and that he understood that the object possessed was a weapon. *See People v. Quick,* 190 Colo. 171, 544 P.2d 629 (1976) (requisite intent for offense of possession of a narcotic drug). Our review of the record reveals

---

[5] Section 18-1-501(5), C.R.S. 1973 (1978 Repl. Vol. 8).
[6] Section 18-1-501(9), C.R.S. 1973.

that the trial court properly instructed the jury of the required culpable mental state.

The trial court correctly refused to instruct the jury that the possession must be "intentional," for "intentional" does not accurately describe the mental state required for conviction under section 18-12-108.

Moreover, no instruction that the act of possession must be voluntary is required unless there is some evidence which would support a finding that the possession was involuntary. Because no such evidence was presented here, the trial court was correct in refusing to instruct that possession must have been "voluntary."

## IV. *Officers' Testimony.*

 The defendant contends that certain statements made by Officers Niemand and Hunter during the trial were hearsay and that the admission of these comments denied him a fair trial. We do not agree.

Before presentation of evidence at the trial commenced, the court ordered restrictions on the police officers' testimony regarding events which had occurred before their arrival at Barnum Park. The court ruled that the officers could testify that they had received a call on an incident involving a man of the defendant's description, but that they must refrain from mentioning that the individual was reported to be drunk and brandishing a weapon.

On direct examination, in response to a general question asking him to explain what had occurred on the evening of June 1, 1976, Officer Hunter stated merely that he and Officer Niemand had received a radio call describing an incident in Barnum Park. Officer Niemand, on direct examination, testified that upon arriving at the park he and Officer Hunter had seen a person who appeared to be the one whose conduct had evoked the call. He stated that upon driving closer, it became clear "who it was as far as, you know . . . ." On cross-examination, defense counsel asked Officer Niemand if, when he got out of the car and approached the defendant, he had his gun drawn and pointed at the defendant. Officer Niemand replied in the affirmative. On redirect, the district attorney asked the officer why his gun had been drawn, and the officer replied, "Because the individual was purported to have a weapon."

None of the above statements by the officers were inadmissible hearsay. They were elicited only to establish the officers' reasons for initially going to the park and for drawing their guns after arrival there. The statements were not offered to show the truth of the contents of the radio report or to establish that the defendant did in fact possess a weapon.

Even though the trial court had previously restricted the officers' testimony regarding the reported possession of a weapon by the defendant, the admission of Officer Niemand's statement elicited on redirect examination was not improper. The defense "opened the door" to this topic when it asked if the officer's gun had been drawn. The district attorney

146

had a right to explain or rebut any adverse inferences which might have resulted from that cross-examination question. *Abeyta v. People,* 156 Colo. 440, 400 P.2d 431 (1965); *Carter v. People,* 119 Colo. 342, 204 P.2d 147 (1949).

Accordingly, the officers' explanatory testimony was admissible for the above purposes. Although the trial judge could have instructed the jury on the limited purpose of this testimony, his failure to do so was harmless error. *Kurtz v. People,* 177 Colo. 306, 494 P.2d 97 (1972).

V. *Sufficiency of Evidence.*

Examination of the whole record leads us to hold that the evidence was sufficient to support the defendant's conviction. The trial court did not err in submitting the case to the jury.

Accordingly, the conviction is affirmed.

MR. CHIEF JUSTICE HODGES does not participate.