The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 21, 2019

## 2019COA38

**No. 15CA0982, *People v. Cohen* — Evidence — Admissibility — Opening the Door Doctrine — Hearsay — Relevancy and Its Limits; Constitutional Law — Sixth Amendment — Confrontation Clause**

A division of the court of appeals addresses the limits of the "opening the door" doctrine — a fairness-related trial doctrine via which one party may introduce otherwise inadmissible evidence after the other party first "opens the door" to it. The division holds that this doctrine is limited; any otherwise inadmissible evidence introduced after one party opens the door must be confined to preventing any unfair prejudice or misleading impression that might otherwise result. The division also holds that certain statements introduced in defendant's trial went far beyond anything allowed by the opening the door doctrine; were inadmissible on hearsay, relevance, and undue prejudice grounds; and violated her

Sixth Amendment rights under the Confrontation Clause. Because the error in allowing this evidence was not harmless beyond a reasonable doubt (or harmless), the division reverses defendant's convictions and remands for a new trial.

COLORADO COURT OF APPEALS 2019COA38

Court of Appeals No. 15CA0982
Boulder County District Court No. 14CR437
Honorable Andrew Hartman, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Emily Elizabeth Cohen,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE J. JONES
Terry and Grove, JJ., concur

Announced March 21, 2019

Philip J. Weiser, Attorney General, Erin K. Grundy, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Emily Elizabeth Cohen, a formerly licensed Colorado lawyer, appeals the judgment of conviction entered on jury verdicts finding her guilty of thirteen counts of theft. Among the issues we address is whether defendant opened the door to extensive evidence of the investigations the Colorado Office of Attorney Regulation Counsel (OARC) conducted on her, and the results of those investigations. We conclude that while some evidence of the fact of and basis for the investigations could come in, much of the evidence about the investigations, and OARC's findings, shouldn't have. In so concluding, we reject the People's argument that defendant opened the door to all of the admitted evidence, and discuss the limits of the opening the door doctrine. In the end, we hold that the district court erred in admitting three OARC complaints against defendant, and that the error wasn't harmless. We therefore reverse the judgment of conviction and remand the case for a new trial.

## I.     Background

¶ 2     Defendant practiced law in Boulder, specializing in immigration law. The People charged her with fifty-four counts of theft, each relating to her alleged mishandling of client funds. More

specifically, the People alleged that defendant took cash payments up front and then didn't do the work she had agreed to do, became difficult or impossible to contact, and didn't provide her clients with refunds.

¶ 3     The People ultimately tried defendant on twenty-one of the charges. The prosecution called over a dozen witnesses, including several of defendant's former clients, many of whom testified as to their payments, defendant's failure to perform services, and their difficulty getting in touch with her.

¶ 4     But a significant portion of the eleven-day trial focused on defendant's ethical obligations under the Colorado Rules of Professional Conduct (RPC) and her failure to comply with those obligations. For example, the prosecution presented evidence that defendant spent client payments before earning them and often deposited as yet unearned payments into her personal accounts rather than into her attorney trust (COLTAF) account.[1] OARC

---

[1] A COLTAF account is a type of trust account an attorney may use for all fees not yet earned (among other things). *See* Colo. RPC 1.15B. "COLTAF" stands for Colorado Lawyer Trust Account Foundation.

employees testified concerning attorneys' ethical obligations under the RPC and that defendant had been under investigation since 2012 for possible ethical violations. The court admitted into evidence letters that defendant had received from OARC informing her of the investigation. Over defense counsel's objections, the court also admitted three of the complaints that OARC had filed against her. And the district court allowed another attorney to testify at some length about her concerns that defendant hadn't behaved honestly and ethically in a variety of ways, none of which related to the handling of client funds.

¶ 5 The district court instructed the jury on the elements of theft and gave an instruction containing language from one of the Rules of Professional Conduct relating to the handling of client funds. That instruction (Instruction 11) quoted Colo. RPC 1.15A: "A lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in trust accounts[.]" It also included other language, not directly quoting the RPC, explaining that client funds are not the attorney's property until the

attorney earns them by "provid[ing] some benefit or service in exchange for the fee . . . ."

¶ 6     After some deliberation, the jurors asked the court whether they could use the OARC RPC charging decisions to inform their decision-making; whether the OARC's standard for verifying the receipt of money by an attorney was the standard they should apply; whether failure to deposit client funds into a COLTAF account before earning fees constitutes "intent to permanently deprive" (one of the elements of theft); and whether earning fees at a later time can undo a prior COLTAF violation.  The jurors also indicated that they were deadlocked on at least one charge.  Perhaps without consulting defense counsel (the record isn't clear whether the attorneys were even in the room; defendant claims they weren't), and without defendant present, the court responded to the jurors' questions noted above by merely telling them they had all the evidence they were to consider, they should follow the instructions, and these were issues for them to decide.  The court (also apparently without consulting counsel and outside counsel's

4

and defendant's presence) also read the jurors a modified *Allen* instruction.[2]

¶ 7 The jury continued deliberating and returned guilty verdicts on thirteen counts. It hung on one and acquitted on the remaining seven.

## II. Discussion

¶ 8 Defendant contends the district court erred by (1) admitting the OARC complaints; (2) including the instruction about an attorney's ethical obligations vis-a-vis earning fees and handling client funds; (3) allowing another immigration attorney to respond at length to a juror's question about defendant's "red flags"; (4) responding to jurors' questions without consulting with her counsel and outside her and her counsel's presence; and (5) giving the jury a modified *Allen* instruction without consulting her counsel and outside her and her counsel's presence. We agree with defendant that reversal is required based on the court's erroneous admission

---

[2] A modified *Allen* instruction is a supplemental jury instruction that the court may provide when the jury indicates that it can't come to unanimous agreement. In essence, it urges jurors to do so without sacrificing their independent judgment. *Gibbons v. People*, 2014 CO 67, ¶ 1.

of the OARC complaints. We also address the jury instruction issue because it's likely to arise again on remand.

## A. OARC Complaints

¶ 9     First, defendant contends that the district court erred by admitting the three OARC complaints into evidence. She argues that the complaints were inadmissible for a number of reasons. We conclude that while certain facts pertaining to the complaints had some relevance to the charges, the complaints themselves are replete with inadmissible hearsay. We also conclude that allowing all this hearsay into evidence violated defendant's Sixth Amendment right to confrontation, and that, on the whole, the danger of unfair prejudice, confusion of the issues, and misleading the jury substantially outweighed the complaints' limited probative value. Because the error in admitting the totality of these complaints wasn't harmless, we must reverse defendant's convictions.

### 1. Standard of Review

¶ 10     Ordinarily, we review a district court's evidentiary rulings for an abuse of discretion. *Dunlap v. People*, 173 P.3d 1054, 1097 (Colo. 2007); *People v. Clark*, 2015 COA 44, ¶ 14. But to the extent such rulings impact a defendant's rights under the Confrontation

Clause, we review challenges to them de novo. *Bernal v. People*, 44 P.3d 184, 198 (Colo. 2002).

¶ 11    The People concede that defendant preserved hearsay, Confrontation Clause, and relevance/undue prejudice objections to the complaints. So if we conclude that the court erred in applying the Colorado Rules of Evidence, we must then reverse unless the People show that the error was harmless, meaning that there is no reasonable possibility that it contributed to defendant's convictions. *Pernell v. People*, 2018 CO 13, ¶ 22; *see James v. People*, 2018 CO 72, ¶ 18. If we conclude that the court violated defendant's constitutional right of confrontation, we must reverse unless the People show that the error was harmless beyond a reasonable doubt. *Nicholls v. People*, 2017 CO 71, ¶ 17; *Hagos v. People*, 2012 CO 63, ¶ 11.[3]

---

[3] The supreme court has recently articulated the tests for determining harmlessness beyond a reasonable doubt and harmlessness in identical terms: whether there is a reasonable possibility that the error contributed to the conviction. *E.g.*, *Zoll v. People*, 2018 CO 70, ¶ 18 (citing *Hagos v. People*, 2012 CO 63, ¶ 11) (harmless beyond a reasonable doubt); *Pernell v. People*, 2018 CO 13, ¶ 22 (harmless). With all due respect, given that the prosecution has the burden under either standard, that can't be right. As a matter of logic, and as the court recognized in *Hagos*,

## 2. Applicable Law

¶ 12    Hearsay — a statement by one other than the declarant while testifying that is offered to prove the truth of the matter asserted — is generally inadmissible.  CRE 801(c); CRE 802; *People v. Phillips*, 2012 COA 176, ¶ 61.  Such statements are "presumptively unreliable."  *Blecha v. People*, 962 P.2d 931, 937 (Colo. 1998).  But a statement isn't hearsay if it's offered for a purpose other than to prove the truth of the matter asserted — for example, to show its effect on the listener.  *People v. Robinson*, 226 P.3d 1145, 1151 (Colo. App. 2009).  In such circumstances, the statement may be admissible.

¶ 13    The Confrontation Clause says that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The United States Supreme Court has held that this clause bars out-of-court testimonial statements unless the declarant is available to be

---

¶ 12, reversal must be more difficult to obtain under the harmless error standard than under the harmless beyond a reasonable doubt standard.  Perhaps the supreme court should resolve this conundrum.

cross-examined or the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Generally, a statement is testimonial if its primary purpose is to establish or prove past events potentially relevant to a later trial. *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also Crawford*, 541 U.S. at 51-52.

¶ 14 Even apart from hearsay and Confrontation Clause limitations, evidence must, of course, be relevant — that is, it must have some tendency to make the existence of a fact of consequence more or less probable. CRE 401; CRE 402. But even if evidence is relevant, the court must still exclude it if the danger of unfair prejudice, confusion of the issues, or misleading the jury substantially outweighs that evidence's probative value. CRE 403.

### 3.  The Complaints

¶ 15 OARC filed its first complaint against defendant in February 2011. That complaint alleged that defendant had failed to disclose information on her application to the Colorado bar, including her maiden name, certain employment history, and past due debts; that she had practiced law without a license; that she had testified

falsely that she was licensed in Texas; and that she had filed false affidavits with the Denver County Court.

¶ 16    During defendant's trial in this case, the prosecutor sought to admit a copy of this complaint. Defense counsel objected based on relevance, hearsay, and confrontation. The court admitted the complaint over these objections but didn't say why.

¶ 17    OARC filed two more complaints against defendant in 2013 and 2014, respectively. These complaints included information similar to the criminal allegations against defendant (that she had kept clients' money despite doing little or no work on their cases), but discussed former clients not named in the criminal charges for which she was on trial.[4] In total, the second and third complaints alleged seventy-eight RPC violations. But in addition to the information that tracked allegations in this case, the OARC complaints contained other negative allegations against defendant,

---

[4] The People had charged defendant with theft in relation to three of the clients mentioned in these complaints. But before trial, they had dismissed two of those charges without prejudice. So only one of the allegations in the complaints involved the specific conduct for which defendant was on trial at the time.

including that she had incorrectly advised clients on how to qualify for certain visas.

¶ 18   Defense counsel objected to the admission of the second and third complaints on grounds of prejudice, relevance, CRE 404(b), and confrontation.  The prosecutor responded that the complaints were relevant because they addressed "exactly the same kind of client handling issues" as those in the criminal case, and because they showed defendant's mental state.  The court then admitted the complaints because they "put the defendant on notice of her obligations, and that definitely impacts the intent element in the pending complaint."

4.   Analysis

a.   Hearsay

¶ 19   The complaints are replete with OARC's and defendant's former clients' assertions of unethical conduct; many of the assertions don't have any bearing on whether defendant committed theft.  To be sure, the fact that OARC had informed defendant of her ethical obligations concerning handling of client funds bore somewhat on defendant's knowledge and intent, but the lengthy complaints went far beyond those issues.  Indeed, the first

complaint didn't bear on those issues at all. And contrary to the People's assertion, the prosecution used the complaints for the truth of the matters asserted therein. For example, during cross-examination, the prosecutor asked defendant to confirm aspects of the first complaint (primarily relating to her honesty) and asked whether she agreed that "this is what [OARC] concluded after their investigation . . . ." During rebuttal closing, the prosecutor argued that the complaints *showed* that defendant had "committed perjury" before another judge and had *in fact* been untruthful on several occasions. The prosecutor also argued, by clear implication, that because the allegations in the latter two complaints were similar to those in this case, the jury could see there was truth in the criminal charges.

¶ 20 We aren't persuaded by the People's contention that the complaints weren't hearsay because they were admitted to show defendant's intent. The first complaint had nothing to do with mishandling client funds. It's true that defendant's receipt of the second and third OARC complaints put her on notice of her ethical obligations, and therefore cast some light on her intent. But the complaints themselves weren't necessary to make that point and, as

12

discussed, weren't actually used to make it. By the time the prosecutor moved to admit each complaint, the jury had already heard testimony from OARC attorneys and defendant herself about the fact and bases of the investigations and establishing that defendant had received the complaints. So admitting the actual complaints added nothing of relevance to the prosecution's theory that defendant knew she was mishandling client funds.

¶ 21    Nor are we persuaded by the People's argument that the OARC complaints were admissible because defense counsel opened the door to them during opening statements. Otherwise inadmissible evidence can become admissible if the defendant first "opens the door" to it. *See Golob v. People*, 180 P.3d 1006, 1012 (Colo. 2008) ("When a party opens the door to otherwise inadmissible evidence, his opponent may then inquire into the previously barred matter.").

¶ 22    Defense counsel had implied during opening that the OARC investigations began because of "an inflammatory letter" sent by defendant's child's father and that the investigator was biased against her. And so, the People say, the complaints could come in. We aren't persuaded.

¶ 23     The concept of "opening the door" isn't unlimited.  It

"represents an effort by courts to prevent one party in a criminal

trial from gaining and maintaining an unfair advantage by the

selective presentation of facts that, without being elaborated or

placed in context, create an incorrect or misleading impression."

*Id.*  So otherwise inadmissible rebuttal evidence "is permitted 'only

to the extent necessary to remove any unfair prejudice which might

otherwise have ensued from the original evidence.'"  *United States v.*

*Martinez,* 988 F.2d 685, 702 (7th Cir. 1993) (quoting *United States*

*v. Winston,* 447 F.2d 1236, 1240 (D.C. Cir. 1971)); *accord, e.g.,*

*State v. Groce,* 111 A.3d 1273, 1277 (Vt. 2014); *see generally*

1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence*

§ 1:12, at 70-75 (4th ed. 2013) (discussing the necessary "fit"

between the initial proof and the proposed counterproof).  The

opening the door doctrine, therefore, can be used only to prevent

prejudice; it can't be used as an excuse to inject prejudice into the

case.  *United States v. Johnson,* 502 F.2d 1373, 1376 (7th Cir.

1974); *United States v. Beno,* 324 F.2d 582, 588-89 (2d Cir. 1963);

*State v. Batchelor,* 376 A.2d 737, 740 (Vt. 1977) (the doctrine isn't a

tool for "prosecutorial 'over-kill'"); *see* Mueller & Kirkpatrick, § 1:12,

at 73 (the doctrine is "supposed to prevent prejudice (not to introduce or exacerbate it)").  And in like vein, it doesn't "give an opponent unbridled license to introduce otherwise inadmissible evidence into the trial, nor does it justify receipt of rebuttal evidence merely because it is in the same category of excludable evidence as the evidence previously offered."  *Martinez*, 988 F.2d at 702.  "Where the rebuttal evidence does not directly contradict the evidence previously received, or goes beyond the necessity of removing prejudice in the interest of fairness," it shouldn't be admitted.  *Id.*; *accord United States v. Jett*, 908 F.3d 252, 271 (7th Cir. 2018) (and noting that "[t]he gist of the doctrine is proportionality and fairness"); *see* Mueller & Kirkpatrick, § 1:12, at 75 ("The question in each case is not whether initial proof shares some common quality with proof offered in response.  Rather, it is whether the latter answers the former, and whether it does so in a reasonable way without sacrifice of other important values.").

¶ 24     This limited purpose is evident in the supreme court's reasoning in *People v. Tenorio*, 197 Colo. 137, 590 P.2d 952 (1979).  In that case, during cross-examination, defense counsel asked an officer if he had drawn his gun when he approached the defendant.

The officer said "yes." On redirect, the prosecutor asked the officer why he had drawn his gun, and the officer explained that the defendant was reported to have a weapon. The court had previously ruled this information inadmissible. The supreme court held that even though the information was otherwise inadmissible, the defense had opened the door to the topic by asking if the officer had drawn his gun. *Id.* at 145, 590 P.2d at 958. This is because the prosecutor "had a right to explain or rebut any adverse inferences which might have resulted" from that question. *Id.* at 146, 590 P.2d at 958.

¶ 25    Similarly, in *People v. Davis*, 312 P.3d 193 (Colo. App. 2010), *aff'd on other grounds*, 2013 CO 57, defense counsel asserted during his opening statement that a prosecution witness only provided helpful information to the police officer after her interview had become confrontational (suggesting that she had been coerced into changing her story). *Id.* at 196-97. A division of this court held that this opened the door to the officer's response to the

prosecutor's question *why* the officer began questioning the witness in a more confrontational manner. *Id.* at 197.[5]

¶ 26     These cases tell us, consistent with the out-of-state authority cited above, that when one party injects a particular issue into a case, the opposing party may introduce otherwise inadmissible evidence only to the extent necessary to "rebut any adverse inferences which might have resulted," *Tenorio,* 197 Colo. at 146, 590 P.2d at 958, or to correct "an incorrect or misleading impression." *Golob,* 180 P.3d at 1012.

¶ 27     In this case, the prosecutor actually discussed the OARC investigations before defense counsel did. But in light of the purpose of the "opening the door" rule, we'll assume that the defense's implicit characterization of the investigations as grounded in bias opened the door to further evidence on the matter.

¶ 28     Evidence that the complaints existed and evidence of why they were filed was admissible to rebut the implication that OARC had a

---

[5] *See also People v. Pernell,* 2014 COA 157, ¶ 37 (upholding the admission of a victim's (prior consistent) hearsay statements to rehabilitate her credibility after the defense claimed that she had fabricated her allegations), *aff'd on other grounds,* 2018 CO 13.

vendetta against defendant. *See id.*; *Tenorio*, 197 Colo. at 146, 590 P.2d at 958. (And for reasons discussed above, limited testimony about the complaints was admissible to show defendant's knowledge and intent.) Even so, the fact that defense counsel mentioned the OARC investigations and the investigator's supposed bias didn't give the prosecution carte blanche to introduce *any and all* evidence related to the investigations, including the entire complaints themselves, which contained a great deal of additional irrelevant and prejudicial information as well as OARC's conclusions that defendant had acted unethically. Nor did it give the prosecutor license to argue that the allegations in the complaints — many of which had nothing to do with client funds — were true. And we note that the court didn't do anything to limit the jury's consideration of the complaints to the issues of bias, knowledge, and intent.

¶ 29    In sum, we conclude that the complaints were, in very large part, inadmissible hearsay. It follows that the court erred in admitting the complaints, or at least in admitting them in their entirety.

### b. Confrontation Clause

¶ 30    A statement is testimonial for Confrontation Clause purposes if it was made under circumstances that would lead an objective witness to believe that the statement would be available for use at a later trial. *United States v. Summers,* 414 F.3d 1287, 1301-02 (10th Cir. 2005); *Compan v. People,* 121 P.3d 876, 880 (Colo. 2005), *overruled on other grounds by Nicholls v. People,* 2017 CO 71.

¶ 31    The hearsay statements in the complaints by witnesses were testimonial. The declarants volunteered information to OARC knowing that their statements could be used to support an investigation of — and possible sanctions against — defendant. And they could have anticipated that a criminal investigation and criminal charges would result. *See Davis,* 547 U.S. at 821; *People v. Cevallos-Acosta,* 140 P.3d 116, 129 (Colo. App. 2005) (the declarant's intent should be considered when determining whether a statement is testimonial). The People don't argue otherwise.

¶ 32    Only one of the declarants testified at trial. Defendant therefore didn't have an opportunity to question most of them about statements in the complaints. As a result, admitting the complaints

in their entirety violated defendant's constitutional right to confrontation.

### c. Danger of Unfair Prejudice

¶ 33    We also conclude that, even if we assume portions of the complaints had some relevance, that relevance was substantially outweighed by the danger of unfair prejudice.  As discussed, admitting the complaints themselves wasn't necessary to show defendant's knowledge and intent or to rebut any implication of bias.  And they contained a great deal of information about unrelated alleged ethical violations.  Perhaps more importantly, the complaints added to the impression, clearly conveyed by the prosecution, that the case was about whether defendant had practiced law in accordance with her ethical obligations.  Those ethical obligations, however, didn't set the standard for criminal culpability.  As discussed below, the complaints, and much of the other evidence, actually confused the jurors; they didn't know whether a breach of ethical obligations established elements of the theft charges.  Though we must assume the maximum probative value and minimum unfair prejudice of the evidence, *see People v. Rath*, 44 P.3d 1033, 1043 (Colo. 2002), the balance in this case

clearly weighs against the admissibility of the complaints (again, at least in their entirety).

### d. Harmlessness

¶ 34 Having determined that the district court erred, we must consider whether the People have shown that the error was harmless beyond a reasonable doubt. They haven't.[6]

¶ 35 No doubt, there was sufficient admissible evidence that would support the guilty verdicts. But the prosecution spent a considerable amount of time, both during the evidentiary part of the trial and in closing, using the OARC complaints to demonstrate that defendant routinely lied and violated ethical rules. That evidence and argument painted defendant as dishonest and unethical. Indeed, the first complaint, which didn't have anything to do with alleged mismanagement of clients' money, established only that OARC believed defendant had lied repeatedly in unrelated matters.

¶ 36 The jurors asked a number of questions indicating that the OARC evidence deeply impacted their view of the case; they seemed

---

[6] Nor have the People shown that the nonconstitutional error was harmless.

21

to think that the ethical standards equated to some of the elements of theft. The trial's focus on the ethical violations no doubt led to their confusion about how to apply the law and reach a verdict.

¶ 37 True, the jury acquitted defendant of some charges. But, contrary to the People's suggestion, that doesn't preclude the existence of a reasonable possibility that the inadmissible evidence influenced the jury's guilty verdicts. And we conclude that there is such a possibility. We must therefore reverse the judgment.

## B. Jury Instructions

¶ 38 We address defendant's contention regarding the instruction on handling client funds because the issue whether such an instruction is appropriate is likely to arise in the event of a retrial.

¶ 39 As noted, in addition to the instructions defining the elements of theft, the court gave the jury an instruction — Instruction 11 — quoting provisions of the RPC and defining when an attorney "earns" the money her clients pay her. The court provided no explanation of how the jury was to apply that instruction. And the jury indicated it didn't understand how to apply it: the jurors submitted a question to the court asking whether failure to deposit client funds into a COLTAF account established the intent element

of theft.  In response, the court merely referred the jury back to the instructions.

¶ 40    A court must accurately instruct the jury on the law relevant to each issue presented, but it must not give an instruction that misstates the law or "unduly emphasizes some part of the evidence." *People v. Ellsworth*, 15 P.3d 1111, 1116 (Colo. App. 2000).  If the court gives the jury an instruction that contains technical information separate from the elements of the crimes at issue, the court should explain the instruction so that the jury can understand what it means and how to apply it.  *See Pueblo Bank & Tr. Co. v. McMartin*, 31 Colo. App. 546, 549, 506 P.2d 759, 761 (1972) (it was reversible error to include language of a highly technical statute in the jury instructions without sufficient explanation how the jury could properly interpret its meaning and apply it).  And, when a jury asks a question, an additional instruction is appropriate unless

> (i) the jury may be adequately informed by directing [its] attention to some portion of the original instructions; (ii) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or (iii) the request would call upon the judge to express

> an opinion upon factual matters that the jury
> should determine.

*Leonardo v. People*, 728 P.2d 1252, 1255 (Colo. 1986).

¶ 41    The language of Instruction 11 wasn't objectionable. The instruction accurately stated Colorado's ethical rules on how an attorney should handle client funds. And it could have helped the jurors understand the elements "without authorization" and "intent" in the context of the case. But the instruction was, at best, incomplete: the district court didn't tell the jurors how to use the instruction and what its limits were. In not doing so, the court erred.

¶ 42    The jury's confusion about how to apply Instruction 11 was evident. Even after hearing all the instructions and deliberating, we know that at least one juror was unclear on how a violation of attorney ethical rules would impact the determination of defendant's guilt. At that point, the district court had another opportunity to tell the jury how it could consider defendant's failure to deposit client funds into her COLTAF account. The court should have done so.

¶ 43 On remand, in the event of a new trial, any instruction along these lines must be accompanied by an explanation of how it bears on the issues that the jury must resolve and must make clear that violations of ethical rules don't, by themselves, prove any of the elements of theft.

## III. Conclusion

¶ 44 We reverse the judgment and remand the case for a new trial. In the event of a new trial, the court should maintain a tight rein on what evidence is introduced and how the jury is instructed so that the trial doesn't again devolve into largely an extended inquiry into defendant's compliance with her ethical obligations.

JUDGE TERRY and JUDGE GROVE concur.