22CA0147 Peo v Ramirez 08-01-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA0147 City and County of Denver District Court No. 19CR8711 Honorable David H. Goldberg, Judge The People of the State of Colorado, Plaintiff-Appellee, v. John Alexander Ramirez, Defendant-Appellant. JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS Division IV Opinion by JUDGE NAVARRO Pawar and Johnson, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 1, 2024 Philip J. Weiser, Attorney General, Jessica E. Ross, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Crane & Tejada, P.C., Beale C. Tejada, Denver, Colorado, for Defendant-
Appellant 
1 ¶ 1 Defendant, John Alexander Ramirez, appeals the judgment of conviction imposed on jury verdicts finding him guilty of three counts of second degree assault causing serious bodily injury. We reverse and remand for a new trial. I. Factual and Procedural History ¶ 2 The evidence admitted at trial allowed the jury to find that the following events occurred. Because we remand for a new trial, we express no opinion on whether the allegations against Ramirez are true. ¶ 3 In November 2019, police officers responded to the home of the alleged victim
1 after receiving a report of a domestic violence incident. Jeffrey Hahl, the victim’s neighbor, had called the police after he saw her in the street “[l]oudly calling for help.” Upon arrival, the officers observed that the victim had lacerations on her face as well as several broken or dislodged teeth. The victim informed the officers that she and Ramirez got into an argument and that he struck her multiple times in the face with a closed fist. She also said she had attempted to defend herself with a 1 For brevity’s sake, we will refer to her as the “victim,” going forward. 
2 pocketknife; however, she claimed that Ramirez took the pocketknife from her and cut her face with it. The interaction between the victim and officers was recorded by the officers’ body cameras. ¶ 4 Ramirez was ultimately arrested and charged with first degree assault, two counts of second degree assault, and child abuse. Before trial, he waived his right to counsel and represented himself. The trial court appointed advisory counsel and a defense investigator. ¶ 5 Although under subpoena, the victim did not appear at trial, but her statements to the police and her neighbor were admitted into evidence. A jury acquitted Ramirez of first degree assault but convicted him of three counts of second degree assault.
2 ¶ 6 On appeal, Ramirez contends that the trial court (1) erred by concluding that he had opened the door to admission of the victim’s hearsay statements on an unredacted video recorded from an 2 One of the second degree assault convictions represented a lesser included offense of the first degree assault charge. The trial court dismissed the child abuse count on Ramirez’s motion for judgment of acquittal. 
3 officer’s body camera; (2) violated his constitutional right to confrontation by admitting those statements (because the victim did not testify at trial); (3) erred by denying his request to rescind his waiver of the right to counsel; and (4) erred by denying his request to continue the trial based on the alleged discovery of new evidence. ¶ 7 Because we agree with his first contention, we reverse the judgment and remand for a new trial. In light of that decision, we need not resolve Ramirez’s other contentions.
3 II. Opening the Door to Hearsay ¶ 8 We agree with Ramirez that the trial court erred by ruling that his questioning of Officer Matthew Van Portfliet opened the door to admission of the victim’s hearsay statements on the unredacted video recorded from the officer’s body camera. 3 To the extent the parties argue that we should also address the constitutional issues raised on appeal, we decline to do so because it is not necessary to resolve this appeal. Under the doctrine of constitutional avoidance, we address constitutional issues only if necessary. People v. Valdez, 2017 COA 41, ¶ 6; see also People v. Lybarger, 700 P.2d 910, 915 (Colo. 1985) (“Axiomatic to the exercise of judicial authority is the principle that a court should not decide a constitutional issue unless and until such issue is actually raised by a party to the controversy and the necessity for such decision is clear and inescapable.”). 
4 A. Standard of Review and Applicable Law ¶ 9 The People concede that Ramirez preserved this claim, and we concur. ¶ 10 We review for an abuse of discretion a trial court’s decision to admit evidence. People v. Glover, 2015 COA 16, ¶ 10. “A court abuses its discretion if it misconstrues or misapplies the law or otherwise reaches a manifestly arbitrary, unreasonable, or unfair result.” Id. ¶ 11 The judicially created doctrine of “opening the door” aims to prevent one party from gaining an “unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression.” People v. Murphy, 919 P.2d 191, 195 (Colo. 1996). Thus, “[w]hen a party opens the door to inadmissible evidence, his opponent may then inquire into the previously barred matter” more fully in order to provide a complete picture of the evidence. Id. ¶ 12 The opening the door doctrine, however, has limits. People v. Cohen, 2019 COA 38, ¶ 23. It does not give an opposing party “unbridled license to introduce otherwise inadmissible evidence into the trial, nor does it justify receipt of rebuttal evidence merely 
5 because it is in the same category of excludable evidence as the evidence previously offered.” Id. (quoting United States v. Martinez, 988 F.2d 685, 702 (7th Cir. 1993)). Rather, when one party injects a particular issue into a case, the opposing party may introduce otherwise inadmissible evidence but only to the extent necessary to “rebut any adverse inferences which might have resulted” from the original evidence, People v. Tenorio, 197 Colo. 137, 146, 590 P.2d 952, 958 (1979), or to correct “an incorrect or misleading impression,” Golob v. People, 180 P.3d 1006, 1012 (Colo. 2008). B. Additional Facts ¶ 13 As a result of the victim’s failure to appear at trial, the prosecution chose to redact portions of the video from Officer Van Portfliet’s body camera to omit the victim’s statements. In the redacted version, the audio of her statements was mostly muted, but the video depicted her talking as well as her demeanor. ¶ 14 When the officer testified on direct examination, the prosecutor carefully avoided eliciting any hearsay statements of the victim. The prosecutor explicitly instructed the officer to avoid restating any of the victim’s comments and to discuss only what the officer actually observed. The officer described the victim’s behavior 
6 and appearance. The officer also testified that he did not observe anything from the victim that gave him concerns about her intoxication. ¶ 15 The prosecution offered into evidence Exhibit 2, which was video from the officer’s body camera but with the victim’s statements redacted. The officer then testified to the victim’s reluctance to cooperate in the investigation. Specifically, he testified that the victim did not agree to have him take photographs her injuries and that she did not agree to have her home processed by the crime scene unit (which would have included taking photographs of the home). Noting that the victim was being transported to the hospital, the officer also said the victim did not agree to cooperate when he informed her that officers would respond to the hospital “to complete further paperwork.” ¶ 16 On cross-examination of the officer, Ramirez asked a handful of questions. As relevant here, Ramirez engaged in the following colloquy with the officer: Q: [The victim] told you that the knife was hers? A: Yes. 
7 Q: Did she tell you how the argument started? A: No, not that I recall. Q: Okay. Didn’t tell you she was drinking or that she might have been smoking meth? A: No. Q: You asked if she would allow the crime lab into the house to take pictures? A: Yes. Q: And she told you no? A: Correct. Q: She refused to let the officers back in the house to conduct a legal investigation? A: Yes. She stated she didn’t want any photos taken of the house. Q: Then she stopped cooperating altogether? A: Correct. ¶ 17 Based on this questioning, the prosecutor moved to admit the unredacted video of the officer’s interaction with the victim from the body camera (Exhibit 3). The prosecutor argued that, because Ramirez had elicited some “statements made” by the victim during her interaction with the officer, Ramirez had necessarily opened the door to all the victim’s statements during that interaction. But the 
8 prosecutor did not argue that Ramirez’s cross-examination questions had left any misleading impression with the jury or created any adverse inference against the prosecution’s case. Over Ramirez’s objection, the trial court, in a brief ruling, permitted the prosecutor to introduce the entire unredacted body camera video. Like the prosecutor, the court did not identify any misleading impression or adverse inference created by Ramirez’s questioning. ¶ 18 In addition to showing the victim’s injuries and demeanor, the unredacted video revealed her statements directly accusing Ramirez of the charged offenses as well as suggesting his prior criminality. Specifically, the victim said, “My kid’s dad [Ramirez] knocked out my teeth,” and “I have missing teeth now.” (Indeed, she frequently lamented that Ramirez had knocked out her teeth.) She said she had pulled out a knife for protection and that Ramirez had grabbed it from her. She claimed that “[Ramirez] hit me with his fist and knife” and that she was “sliced with a knife” near or on her lip. She also told the officer that she and Ramirez had been arguing before he attacked her and that, during the argument, he “put his hands around my throat.” Finally, she asserted that Ramirez fled on foot after the altercation because he had been drinking and his vehicle 
9 had an “interlock” device preventing its use by someone who has been drinking — suggesting that he had previously committed offenses of driving under the influence. C. Analysis ¶ 19 Ramirez contends that his questioning of Officer Van Portfliet did not open the door to admission of the unredacted video. Alternatively, he argues that, even if his questioning opened the door to some degree, admission of the entire video exceeded what was necessary. 1. Admitting the Unredacted Video Was Error ¶ 20 To reiterate, the purpose of the opening the door concept is to prevent one party from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression. Murphy, 919 P.2d at 195. But while courts permit inquiry into otherwise inadmissible evidence once a party opens the door, the inquiry is limited to the extent necessary to “rebut any adverse inferences which might have resulted,” Tenorio, 197 Colo. at 146, 590 P.2d at 958, or to correct “an incorrect or misleading impression,” Golob, 180 P.3d at 1012. The opening the door 
10 doctrine does not justify admission of rebuttal evidence merely because it is in the same category of excludable evidence as the evidence previously admitted (e.g., a particular witness’s hearsay statements). See Cohen, ¶ 23. ¶ 21 In this case, however, the trial court’s ruling seemed to rest on the misunderstanding that, after one party elicits a portion (even, a small portion) of a hearsay conversation, the opening the door doctrine automatically authorizes the opposing party to elicit the entire hearsay conversation. We say this because the court did not articulate any misleading impression or adverse inference created by Ramirez’s questioning that required correction under the opening the door doctrine. A court abuses its discretion when it misconstrues or misapplies the law. Glover, ¶ 10. ¶ 22 On appeal, the People argue that Ramirez’s questioning of the officer sought to characterize the victim’s statements as admitting that “she was responsible for her injuries (thus implying that he acted in self-defense).” This argument is puzzling because no one at trial — including Ramirez — posited that the victim’s injuries were self-inflicted. And we conclude that no reasonable jury would infer from Ramirez’s self-defense claim and his brief questioning of 
11 Officer Van Portfliet that the victim injured herself. As the People otherwise acknowledge, the self-defense claim was rooted in Ramirez’s (allegedly justified) use of force against the victim. ¶ 23 The People also contend that Ramirez “elicited testimony suggesting that the victim owned the knife, was on drugs, and refused to cooperate with police (again, implying her consciousness of guilt). This suggestion, however, was contrary to what the victim had actually told police, misleading the jury on this subject.” The suggestion that the victim owned the knife, however, was not contrary to what she had told the officer. She said she pulled out a knife to defend herself, without mentioning who owned it. And the People do not attempt to explain how a suggestion that the victim owned the knife — without indicating who, if anyone, used it or how — created a misleading impression or an adverse inference requiring correction.
4 On this point, the People’s argument is gossamer-thin. 4 Before the unredacted video was admitted into evidence, Ramirez did not claim that the victim had pulled a knife on him. He first made this claim in his theory of defense instruction to the jury. 
12 ¶ 24 Moreover, Ramirez’s question about whether the victim said she had been drinking or using drugs did not elicit evidence or create an impression that was contrary to what she told police. As the officer testified and the video confirms, the victim did not say anything about her drinking or using drugs, so the officer’s answer to Ramirez’s question (“no”) did not indicate a conflict with the victim’s statements to the officer. On a related note, we disagree that the evidence elicited by Ramirez’s questioning suggested that the victim was “on drugs.” As noted, Ramirez elicited the officer’s testimony that the victim had not said she consumed drugs or alcohol. This testimony was consistent with the officer’s earlier testimony, elicited by the prosecutor, that the officer did not detect signs of intoxication in the victim. Therefore, Ramirez’s question (and the officer’s answer) did not leave a misleading impression or adverse inference. To the extent any question about the victim’s possible drug or alcohol use was problematic, the prosecutor went down that road first. ¶ 25 Likewise, to the extent Ramirez’s questioning of the officer elicited testimony suggesting that the victim had refused to cooperate with the police, that testimony was cumulative of 
13 evidence previously elicited by the prosecutor. Ramirez elicited testimony that the victim had refused to let the crime lab take photographs of the house, refused to let the police back into the house to conduct their investigation, and “stopped cooperating altogether.” The officer had already testified to those facts on direct examination. If those facts suggested the victim’s refusal to cooperate with the police, the prosecutor’s questioning injected this suggestion first.
5 ¶ 26 In sum, neither the prosecution below nor the People on appeal identify any adverse inference or misleading impression created by Ramirez’s questioning of the officer that required correction through admission of the unredacted video. Hence, admitting the unredacted video under the opening the door doctrine was error. And doing so revealed damning evidence against Ramirez that the jury would not have otherwise heard. The video allowed the jury to hear the victim’s statements describing the assault, implying Ramirez had prior legal issues, and accusing him 5 Ramirez’s question whether the victim “stopped cooperating altogether” did not solicit or elicit a hearsay statement. For this additional reason, this question did not open the door to all the victim’s hearsay statements on the unredacted video. 
14 of fleeing the scene. Indeed, the video gave the jury the victim’s account of the incident — from the victim herself — in greater detail than provided by her brief hearsay statement admitted into evidence through her neighbor’s testimony. ¶ 27 Alternatively, the People contend that the victim’s statements on the unredacted video were admissible under the excited utterances exception to the hearsay prohibition. See CRE 803(2). We decline to resolve this contention because it is inconsistent with the position the prosecution took in the trial court. ¶ 28 Before trial, it became apparent to the parties that the victim would not be present to testify. As a result, the prosecutor decided not to seek admission of the victim’s statements to the officers recorded on the body camera, and the prosecutor redacted those statements from the video. The prosecutor noted, however, that he would seek to admit the victim’s statements to her neighbor under the excited utterances exception. ¶ 29 Ramirez’s advisory counsel expressed concern about proceeding to trial without the victim and about admitting the victim’s statements by way of the excited utterances exception. In response, the prosecutor said, 
15 To respond to counsel’s comments, the excited utterance piece is separate and apart from the redacted videos. The excited utterance piece is essentially that . . . [t]he victim exits her home — this is before police have been called — makes a number of statements to her neighbor who observes her in a panic state with physical injuries. Those would plainly be excited utterances . . . . ¶ 30 The record reveals, therefore, that the prosecutor argued that the excited utterance exception applied to the victim’s statements to the neighbor but conspicuously declined to make this same argument about the victim’s statements to the police. (Thus, the trial court made no findings about whether the victim’s statements to the police were excited utterances, and we have no ruling to review for an abuse of discretion.) Instead, by redacting the victim’s statements to the police on the video without requesting a ruling from the court on the matter, the prosecutor conceded, at least implicitly, that they were inadmissible. ¶ 31 Bolstering the existence of this concession is the prosecutor’s use of the opening the door doctrine. As discussed, the prosecutor argued that Ramirez opened the door to admission of the victim’s statements to the police on the video by his questioning of the officer. The opening the door doctrine, however, applies only if the 
16 challenged evidence is otherwise inadmissible. By relying on this doctrine, the prosecutor again acknowledged that the victim’s statements to police were not otherwise admissible under any theory, including as excited utterances. ¶ 32 Given the concession in the trial court, we decline to entertain the People’s new argument on appeal regarding the excited utterance exception. It is one thing for the People to argue for affirmance on a ground not raised or ruled on below but supported by the record. It is quite another thing for the People to assert on appeal a position inconsistent with one they took below. In an analogous context, our supreme court has admonished the People that it is not appropriate for them “to walk back their concession[s]” made before a lower court; a “prosecutor’s ultimate goal is justice, which is not always synonymous with victory.” Garcia v. People, 2022 CO 6, ¶ 18 n.2; see also People v. Struckmeyer, 2020 CO 76, ¶ 5 (“It is unclear . . . why the People believe that they can concede [reviewability] of an issue in the court of appeals and then take the opposite position in this court . . . .”) (citation omitted). Therefore, we decline to decide whether the excited utterances exception applies to the victim’s statements to the police. 
17 ¶ 33 Given all this, we conclude that the trial court erred by admitting the victim’s statements on the unredacted video. 2. The Error Was Not Harmless ¶ 34 Because Ramirez objected to the evidentiary error, we review for ordinary harmless error. See Davis v. People, 2013 CO 57, ¶ 13. Under this standard, we reverse if the error, when considered in light of the entire record of the trial, substantially influenced the verdict or impaired the fairness of the trial. People v. Stewart, 55 P.3d 107, 124 (Colo. 2002). We conclude that the error warrants reversal under this standard. ¶ 35 During closing arguments, the prosecutor replayed Exhibit 3 (the unredacted video) for the jury and emphasized its importance. The prosecutor argued that the victim and Ramirez had different versions of the events but that the version “told by [the victim] is the one that is true.” The prosecution reiterated the importance of the video by telling the jurors that they “got to hear from [the victim]” even though she did not testify. The prosecution further pressed the video’s significance by stating that the victim “identifies the person who attacked her” and that “she explains exactly what happened.” 
18 ¶ 36 So the challenged video comprised a significant portion of the prosecution’s case against Ramirez. The video supplied information that was not elicited from other witnesses, such as the victim’s detailed account of the assault. She described being sliced by a knife and being hit with fists in the face, as well as Ramirez putting his hands around her throat. She also alleged that Ramirez was drinking, had an interlock device on his vehicle, and fled on foot. ¶ 37 In short, the evidence of the victim’s statements to the police was the strongest and most direct evidence of Ramirez’s guilt. While the other admitted evidence might have been sufficient to support his convictions even absent the challenged statements, that is not the question before us. The proper inquiry in determining a harmless error question is not whether there was sufficient evidence to support the verdict without the improperly admitted evidence but, rather, whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. Yusem v. People, 210 P.3d 458, 469 (Colo. 2009). ¶ 38 In light of the power of the victim’s statements to the police directly accusing Ramirez of the crimes and the prosecutor’s reliance on those statements, we cannot conclude that this evidence 
19 had no substantial influence on the verdict. We are not persuaded otherwise by the fact that the jury acquitted Ramirez of first degree assault. Our role is to decide if the improperly admitted evidence substantially influenced the verdict convicting Ramirez of second degree assault. We conclude that it did, inasmuch as the challenged statements more closely described second degree assault (allegations of being punched in the face, with resulting teeth loss). The victim’s references to the use of a knife were less clear. III. Conclusion ¶ 39 The judgment is reversed, and the case is remanded for a new trial. JUDGE PAWAR and JUDGE JOHNSON concur.